# JAMES W. VAN ALSTYNE ET AL., RESPONDENTS, *v.* THE NATIONAL COMMERCIAL BANK OF ALBANY, APPELLANTS.

*Bill of Exchange—Forged endorsement—Failure to produce.*

The Plaintiffs procured from the Defendants in Albany a draft drawn by the latter on a bank in New York, payable to the order of the Plaintiffs' agents then in West Virginia, and sent such draft to him to enable him to raise money there for the benefit of the Plaintiffs, such agent having no interest in the draft, and the draft was there received for deposit for safe-keeping by another, who forged the endorsement of the payee, and through such forged endorsement negotiated it to a bank there and absconded with the money, of all which due notice was given to both drawers and drawees, and the Plaintiffs demanded payment from the drawees, and gave due notice of non-payment.

The Virginia bank, claiming to have acquired title, forwarded the draft to New York, and caused it to be presented to the drawees and protested for non-payment, and refuse to give up the draft to the Plaintiffs, who have received from the payee (their agent) a formal assignment of the draft.

*Held*—That these facts do not entitle the Plaintiffs to maintain an action either at law or in equity against the drawers without the production of the draft, although there was no want of diligence in making demand of the drawees, so far as such demand can be made without such production, and notwithstanding the drawees still held the funds of the drawers, and are solvent, and ready to pay them to such drawers. ·

· The allegation and proof in such action against the drawers that the negotiation of the draft was by a forged endorsement, and that the present holders, who claim title thereto and a right to recover thereon, are *out of the jurisdiction of this Court, in another State,* do not warrant the Plaintiffs to proceed upon such draft as a *lost draft,* either under our statute or in a Court of Equity, and recover on giving a bond of indemnity to save the Defendants harmless against any claim by virtue of such draft.

The Plaintiffs cannot in this manner cast upon the drawers the burden and hazard, in any future action by the holders of the draft, that such endorsement by the payee was a forgery, ·or the risk that the holders may show either that it was genuine or made under such circumstances as will conclude the payee, or that the circumstances attending the negotiation were such as to entitle them to retain and collect the draft.

This burden and hazard rests upon the Plaintiffs, and the fact that such draft is held in another State makes no difference.

16

APPEAL from a judgment of the General Term of the Supreme Court in the Third District, affirming a judgment for the Plaintiff entered upon the decision of the Referee.

The action is brought to recover from the Defendants the amount of a draft or check drawn by them at Albany upon the National Bank of Commerce in the city of New York, payable to the order of J. H. Abbott, for the sum of five thousand two hundred and eleven dollars, without producing the draft, and while the draft is in the possession of the Second National Bank of Parkersburgh, in West Virginia, which bank claims to be the lawful holders and owners thereof, and refuses to deliver the same to the Plaintiff, and is not a party to the present action.

The facts material to the question decided by the Court are these :—

On or about the 4th of March, 1865, the Plaintiffs purchased the draft from the Defendants for their own account, paid therefor, and received the same from the Defendants. They then sent the draft to the said Parkersburgh, in West Virginia, duly enclosed and addressed to J. H. Abbott, the payee therein named.

Said payee had no interest therein, but his name was inserted as payee at the request of the Plaintiffs, and for their convenience in the use of funds which were expected to be obtained thereon. When the draft reached Parkersburgh, J. H. Abbott, the payee, was temporarily absent, and in expectation of its arrival had intrusted his brother, H. C. Abbott, to deposit it in the North-Western Bank for safe-keeping.

H. C. Abbott received the draft, and, as found by the Referee, upon the proof on the trial herein, forged the name of his brother, the payee, on the back of the draft, obtained the money thereon from the Second National Bank of Parkersburgh, to whom he delivered the draft, and fled the country to parts unknown. J. H. Abbott, on the 11th day of August, 1865, assigned to the Plaintiffs all his right, title, &c., in or to the draft.

The Plaintiffs have demanded payment of the draft from the drawees, giving them notice of the foregoing facts. They have also given notice to the Defendants of such facts, and of the re-

fusal of the drawees to pay without the presentation of the original draft, and in all these respects the Plaintiffs have used due diligence.

The Defendants had, and have at all times had, in the hands of the drawees funds sufficient for the payment of the draft; and the drawees are, and at all times have been, solvent, and able to pay to the Defendants all the funds of the Defendants in the hands of such drawees.

The complaint of the Plaintiffs treats the draft, by reason of the facts stated, as a lost draft, and alleged a tender to the Defendants of a bond of indemnity, and offered to give to the Defendants a good and sufficient bond of indemnity to save them harmless of and from all other payments, costs, &c.

The answer of the Defendants, among other things, alleged the possession of the draft by the Parkersburgh Bank, claiming to be the lawful owners and holders thereof for value, and that such bank has notified the Defendants of such claim, and not to issue a duplicate thereof, nor pay the same to any other person.

The Defendants declare that they had, and have always had, funds sufficient for the payment of the draft in the hands of the drawees, and that the drawees are ready and willing to pay it upon proper presentation. They also deny that the draft is lost, and by denials put in issue the Plaintiffs' title.

Upon the facts in substance above stated, the Referee decided that the Plaintiffs were entitled to recover in this action upon executing and delivering to the Defendants a bond with two sureties, in a penalty at least double the amount of the draft, to be approved by the Court, conditioned to indemnify the Defendants against all claims by any person on account of the draft, and all costs, &c.

Such bond being executed and approved, judgment was ordered for the Plaintiffs for the amount of the draft, $5,813.87, and costs $319.53, which judgment being affirmed in General Term, the Defendants appealed to this Court.

*Samuel Hand* for Appellants.

*Lyman Tremain* for Respondents.

WOODRUFF, J.—The Plaintiffs, upon the facts alleged and proved on this trial, are equitable owners of the bill of exchange in question. If in truth no title has been acquired by the Parkersburgh Bank by the negotiation thereof to them, the Plaintiffs are entitled to the possession of the bill.

The question which alone it is necessary to consider, if I am correct in my conclusion upon the question, is, can a party, either as legal or equitable owner of a bill of exchange, demand payment from the drawee, and on refusal charge the drawer, and recover the amount thereof from him without producing the bill, on showing that the bill is in another State, in the possession of one who is not a party to the suit, who has paid full value therefor, who claims title thereto, and a right to recover thereon, but to whom the bill was negotiated by a forged endorsement?

The familiar rule of commercial law, that in order to charge the drawer the bill must be presented to the drawee, and in order to recover from the drawer the bill must be produced, is not and cannot successfully be contradicted: and that this suit is qualified by an exception in the case of lost bills is not denied.

It is not material to inquire whether a recovery by the Plaintiffs, if they are entitled to recover upon the facts stated, shall be deemed warranted by our statute authorizing a recovery in a suit founded upon a bill lost while belonging to the party claiming, or must be founded upon the jurisdiction and power of a Court of Equity to allow such recovery in a case equitably entitling the party thereto. Our Courts are now Courts of Law and Equity. In actions in our Courts the party may have any relief, legal or equitable, to which, upon the facts alleged and proved, he is entitled.

It is, however, pertinent to observe, that the statute in terms gives a recovery only where the bill is lost while belonging to the party claiming.

This was within the jurisdiction and power of Courts of Equity before the statute. The statute, therefore, did not enlarge the jurisdiction of the Court; it simply declared the party in such case entitled to recover in a suit founded on the bill.

If the bill is lost, within the meaning of that statute, it was "lost" in contemplation of a Court of Equity. If it was not a "lost" bill within the statute, but is nevertheless so situated that, in the judgment of a Court of Equity, it should be treated as in like condition, then the claim to recover is made in a jurisdiction competent to give relief. An illustration of the case last supposed is found in that of a bill in course of transmission by a vessel which was captured and carried into a port of the enemy while at war. (6 Ves. Jr., 811.)

Again, it must, for the purpose of the inquiry, be assumed, as in part found by the Referee, that the Plaintiffs have used due diligence in notifying the drawer and drawee of the facts claimed by them in regard to the actual situation of the bill, and that in respect to demand of payment and notice of non-payment they have done all which, without the production of the bill itself, they could reasonably be required to do.

These suggestions bring us to the inquiry above stated, and enable us to present it first in a form much more simple.

Can a recovery of the amount of a bill of exchange be had in a suit against a party thereto, by the legal or equitable owners, without its production, on proof that another person has the possession thereof, claiming title, which title the Plaintiffs are ready to disprove?

An affirmation of this question declares that, upon mere proof of a wrongful holding or detainer of a bill by a third person, not a party to the suit, the acceptor or drawer may be subjected to the hazard of proving such holding by the third person to be wrongful in any future claim which may be made upon him—in other words, such acceptor or drawer may be required to settle the Plaintiff's dispute with an alleged wrong-doer.

No case has been called to our attention in which a recovery has been allowed in such case, and no treatise upon bills of exchange, lost or not lost, states any such proposition. This is not conclusive, perhaps, but it is some evidence that, while controversies respecting the right of recovery upon lost bills have been numerous, no one has supposed that the wrongful detention of

the bill by a third person entitled an alleged owner to recover without its production.

The very object of the rule itself which requires such production is that the party paying may have in his possession the voucher and proof of his payment to a person entitled to payment, and an assurance or guaranty that he shall not be vexed by a claim of another thereon; and the rule is not to be dispensed with in the face of the avowed fact that such other person holds the bill and makes such claim. Indeed, I cannot suppose that a right of recovery would for a moment be claimed without the further fact that the adverse holder of the bill resided in another State.

What should be the influence of that fact? In considering that question the same observation just suggested is equally patent, viz., that no case or authority is found which affirms the right to recover at law or in equity, on the facts stated.

It is proper to bear in mind that the bill which is claimed to be wrongfully withheld from the Plaintiff is not in a country at war with us, to which our citizen cannot resort for the recovery of the bill or its value, and from which the holder cannot come to our courts and prosecute the parties; and it is further proper to suggest—and a Court of Equity in this State should not close its eyes to the fact—that the bill is held in a State where not only the general principles of right and wrong are recognized and enforced, but where the general rules and principles of the law and the maxims of equity prevail as they do with us, and where remedies may be pursued, rights enforced, and wrong redressed, in modes conforming to the ordinary pursuit of justice and equity.

Of so much, at least, the Court must take notice, as presumptively furnishing to the Plaintiffs an opportunity to assert and maintain their rights against the holders of the bill, and, if they have no title, to obtain complete redress.

In the present case not only this is true, but the bill is in a State where judicial tribunals exist by the Federal laws which are common to the several States, proceeding upon like principles,

legal and equitable, there and here, and to which the Plaintiffs may resort.

It is, therefore, unnecessary to consider the case of a bill which, through misadventure or by wrong, has come to the possession of a savage in a remote or inaccessible country, where in every reasonable estimate of its situation it must be declared lost.

The bill was sent voluntarily by the Plaintiffs to Parkersburgh. The facts found import that it was their intention that it should be negotiated there. It was negotiated there, though wrongfully, fraudulently, and by a crime, according to the result of their ex-parte investigation of the claims of the Parkersburgh Bank.

It is quite apparent, however, that there may exist grounds for their claim which the present trial has not disclosed. That Bank may have evidence of the authority of H. C. Abbott to negotiate the draft for which, in perfect good faith, they have paid value; they may show that no forgery has been committed, and they may show facts which would estop J. H. Abbott to deny his authority; they may, if they cannot show a legal title, possibly show an equitable one.

It is true that if this action can be maintained without the production of the draft, we are to take the facts to be as established by the proofs on this trial.

But the suggestions thus made are nevertheless pertinent to the inquiry, whether the adverse holding by the Parkersburgh Bank creates an exception to the general rule, requiring its production in order to a recovery from the drawer.

I am clear in my own opinion, that the fact that the holder resides in another State makes no difference in this respect.

The practical effect of recognizing an exception founded on that circumstance is very important, and the inconvenience and hardships to parties to negotiable paper furnish a strong reason why a Court of Equity should give no countenance to it.

Let it be understood, as I am sure it has never before been understood, that whenever a controversy arises with the holder of negotiable paper residing out of the State, the claimant may sue the parties thereto here and recover, assigning that excuse for not

producing and surrendering it to the drawer, acceptor, or maker, and no party to such paper will be safe. An entirely new ground for invoking equitable interposition and relief will, I think, be introduced into the law, and injustice and wrong to innocent parties to the paper will be done under color of doing equity to a claimant. For it must be remembered that the indemnity which the Court prescribes as the condition of compelling payment is at best a precarious reliance.

In the ordinary fluctuations which occur in the mercantile community, for whom the rules of law and equity which we are considering are especially designed, such indemnity is liable to be utterly worthless when the party has need to look to it for protection.

If recovery is to be had in a case like the present, it can only be placed on the ground that the adverse claimant and holder is in another State.

The fact that the latter is impeached by proof of forgery cannot make any difference. That is not material to the principle involved. It would present the same question if the allegation were that possession of the bill was procured by fraud, so far as the analogy to a lost bill is relied upon ; for the question in the Court of Equity is, first of all, is there a sufficient excuse for not producing the bill ? and to answer that question the particular facts which make an alleged detention wrongful are not material.

If its being wrongfully detained by a party out of the State be an excuse, then, whether the wrong-doer claims through an alleged forged endorsement, or through a fraudulent procurement of possession, or even by a breach of a contract, to retain the bill which came rightly to his possession, can make no difference.

True, if he claims by a forged endorsement of the name of the payee, he can never recover from any of the parties ; but that is not the ground of jurisdiction. If it were, and without that the Court would not grant relief, it is absurd to require indemnity to the Defendant against his claim, for he has none which he can maintain.

That this is so will be readily seen, if the case where the alleged wrongful holder lived within this State be again adverted to. In such case, although a holding by a forged endorsement was alleged, the owner would be compelled to proceed against him as already shown, and he could not proceed as upon a lost bill. It is the non-residence alone which creates any distinction, and therefore the nature or ground of the wrongful detention is not material to the question. It would therefore follow, that if the owner of negotiable notes saw fit to take them to New Jersey, or over the line into any of our adjoining States, and alleged that he was there defrauded of the possession, or borrowed money thereon, and claimed that he had paid the loan, but the holder refused to return them, or even offered them at any of the many banks in our vicinity for discount, and alleged that they kept the notes without making such discount: in all these cases, so far as the question is whether a note is lost, or in a situation in which it should be so regarded in a Court of Equity, because it is in another State, in the hands of a third person having no title, the rule must be the same as where the Plaintiffs' allegation is that possession was obtained through a forged endorsement.

The true ground upon which a party is allowed in equity to require the payment of a lost bill, or a bill taken by the enemy in time of war, on giving indemnity, is that he has no other recourse. He is ready to do, and is required to do, all that he can. It is inequitable that, doing this, he should lose his money. The Court cannot equitably require him to do what the general rule requires; it is unreasonable so to require, because it is not possible that he should do it, and hence it will be seen by examination of the case that very satisfactory proof of the essential fact of loss of the bill is uniformly required.

The fact that the bill is out of the jurisdiction shows no such case. That fact has relevancy to the question of convenience in pressing his remedy for regaining the possession, by establishing his title as against the alleged wrong-doer, but it raises a question of convenience only.

In my judgment the claim made in this case is not only with-

out precedent, but its recognition would be fraught with mischief, and would introduce into the law a rule dangerous in the extreme.

The judgment should be reversed.

JOEL TIFFANY,
State Reporter.