Dwight, P. J.
The action was brought to recover the amount of two deposits made by the plaintiff several years before, for which certificates of deposit were issued to him, payable to his order thereon. He demanded payment of his deposits before commencing the action, but without producing the certificates, and representing, in substance, that they were lost. He was informed that in that case he would be paid upon giving a satisfactory bond of indemnity. A bond was tendered, but, pending its acceptance, the defendant was notified by one Rockwell, who exhibited the certificates, that he had them as the executor of the estate of one Elizabeth A. S. Rockwell, deceased, his late wife, and a sister of the plaintiff, who had the certificates in her possession at the time of her death, claiming to own them. Sometime afterwards the plaintiff commenced this action, alleging the deposit of the several sums and the defendant’s promise to repay the same, on demand, but making no mention of the certificates.
The defendant’s answer admitted the fact of the deposits; averred the issuance of the certificates and the terms thereof; that the plaintiff had not presented the certificates and that the samé were not in his possession, but in that of George W. Rockwell, executor of Elizabeth A. S. Rockwell, deceased, who claimed that, as such; he was the owner and holder of the certificates and entitled to the moneys secured thereby. The answer 'further averred that the plaintiff transferred the certificates to Mrs. Rockwell in her lifetime, and also that the sums of money so deposited were at the time of the several deposits the property of Mrs. Rockwell, and that the plaintiff in making such deposits acted as her agent, and afterwards delivered the certificates to her; that she died the owner and holder of the same and that they are now assets of her estate.
On the trial Rockwell was called as a witness for the plaintiff and under a subpoena duces tecurri produced the two certificates. They were found to be payable to the order of the plaintiff thereon, and not to have been endorsed by him. Rockwell testified that he received the certificates from his wife in her lifetime. He was not permitted to answer the question whether she claimed them as her property, but he testified that in an action brought against her by the plaintiff (which the latter testified was an action to recover possession of the certificates) she produced them under a subpoena before a referee and took them away with her again. He also testified that he was the executor named in the will of his wife, which had been admitted to probate, but that the *426 issuance of letters testamentary was suspended pending an appeal from the decree of the surrogate, and that no administrator of her estate had been appointed in the meantime.
The plaintiff testified that he and his sister lived together before her marriage; that during that time he had the certificates in his possession, in his desk in the house, from which they were taken without his knowledge or consent; that after his sister went away he missed them, and on application to her, she admitted having taken them and promised to restore them to him, but that she never did so ; that the action which he commenced against her to recover possession of the certificates was never prosecuted to judgment, and that when, after her death, he asked Eockwell for the certificates, the latter denied that he had them or knew where they were.
This .was, substantially, all the evidence given on the trial. There was no evidence, or offer of evidence, to show that the plaintiff ever transferred the certificates to his sister, nor that the moneys deposited belonged to her. On the contrary, the evidence, as far as it went, tended to show that she obtained possession of the certificates surreptitiously and without claim of right. But it is needless to say that this evidence is not evidence against Mrs. Bockwell’s estate. It has had no day in court, nor had Mrs. Eockwell in her lifetime, to establish her right, if any, to the certificates, and the claim of her estate is necessarily unaffected by any judgment which might be rendered in this action.
The defendant, therefore, relies on this appeal, upon the contention that there can be no recovery in this action, whatever the plaintiff’s evidence tending to establish his title to the certificates, when it appears that the certificates themselves are in the hands of a third person claiming title thereto. The contention is based upon sound general principles, and is sustained by very definite authority.
The case of Crandall v. Schroeppel, 1 Hun, 557, was one very similar to the present. The negotiable paper there in suit was a promissory note, payable to the plaintiff in that action, or bearer, and was held by an administrator of an estate, who claimed to own it as such, and who produced it on the trial under protest This court (in the former fourth department) affirmed the judgment of a county court, which reversed that of a justice, on the precise ground mentioned, citing as authority Bank of Utica v. Smith, 18 Johns., 240; Freeman v. Boynton, 7 Mass., 486, and especially Van Alstyne v. Nat. Commercial Bank of Albany, 7 Trans. App., 241; S. C., 4 Abb. Ct App. Dec., 449. In the latter case, Judge Wood-ruff, writing the opinion of the court, maintains that there is no reported case nor statement of the text books to the contrary; and the case then in hand was a very strong one. The plaintiffs had bought a draft from the defendant, for their own account, payable to their correspondent in West Virginia, who had no interest in it, but was to use it as directed by the plaintiffs. The evidence showed that the draft had fallen into the hands of a brother of the payee, who endorsed it in the name of the latter, obtained the money and absconded. So that the plaintiffs’ draft, as the *427 evidence tended to show, was in the hands of a transferee by a forged endorsement, and in a foreign state. And yet the court held that not even these circumstances were sufficient to excuse the non-production of the draft itself; that satisfactory as the evidence seemed to be that the plaintiffs had never parted with their title to the draft, it was no evidence against the actual holder of the paper, who might make a very different case when he had his day in court; that the draft was not lost paper, though in another jurisdiction, and that the plaintiffs could not recover without the actual production of the draft, with' power to cancel or surrender the same.
There seems to be no material distinction between that case and this arising out of the different character of the paper in the two cases. The essential fact in both is that the paper was negotiable by delivery, and without the endorsement of the payee. Such was the case with the certificates in question so far as to pass all the title which the payee had at the time of the transfer, Briggs v. Dorr, 19 Johns., 95; Freund v. Importers' Bank, 76 N. Y., 352, and this is all the negotiability which is necessary to constitute a reason for the application of the rule under consideration. The reason is that the defendant is entitled to be insured against liability to pay the certificates a second time. And the reason exists whenever the paper is shown to be in the hands of a third person claiming title thereto. In the case of a lost bill the statute provides for a bond of indemnity. But when it appears that the bill is not lost, and it is traced to the hands of one who claims to be the owner, the maker, or party liable to pay it, cannot be required to accept a bond of indemnity. He has a right to insist that the question of ownership shall be first determined between the rival claimants, and that the right of the party to whom he pays the debt shall be evidenced by possession of the paper, with the power to surrender the same on payment being made; otherwise, as was said in the case of Van Alstyne, the party liable on the paper “ may be subjected to the hazard of proving such holding by the third person to be wrongful in any future claim which may be made upon him; in other words * * * may be required to settle the plaintiff’s dispute with an alleged wrong-doer.”
In this case, as the record shows, the court, in directing a verdict for the plaintiff, ordered the certificates which had been produced in evidence by Rockwell to be impounded with the clerk, and an endorsement to be made upon them showing that the same were in judgment in this action. This was done evidently to destroy their future negotiability by the plaintiff, to whose order they were payable, and this effect it undoubtedly had. But it is clear that it had no effect upon any previous negotiation of the paper if such had been made. It did not affect in any degree the right or claim of Mrs. Rockwell’s estate to retain possession of the certificates, or to maintain an action for their collection.
The remedy of the plaintiff, as clearly indicated by the opinion in the Van Alstyne case, was to bring his action to recover possession of the paper from the alleged wrongful holder; and the par *428 ticular facts of that case afforded ground of dissent by one member of the court, Grover, J., being of the opinion that as the draft was held in a foreign jurisdiction it might be treated as a lost bill. The court held, on the contrary, that the courts of the sister state (and equally, it would seem, of the United States) being open to the plaintiffs’ suit, they were not excused from taking that remedy before attempting to collect the draft from the drawer.
We are unable to see why the case at bar is not within the reason and the rul’e in the case of Van Alsiyne, which seems to be of unquestioned authority, and which has already been implicitly followed by our own court in the case of Crandall v. Schroeppel, supra.
The learned judge at the circuit regarded this case as controlled by the decision in Read v. Bank of Attica, 55 Hun, 154; 28 N. Y. State Rep., 650; but we are not aware that the question here considered was raised at all in that case. It was certainly not considered in the opinion of the court, nor involved in its decision.
For the reason, and on the authority here discussed we think the judgment and order in this case must be reversed.
Judgment and order appealed from reversed and a new trial granted, with costs to abide the event.
Macomber and Corlett, JJ., concur.