Max Freund et al., Appellants, *v.* The Importers and Traders' National Bank, Respondent.

A check, payable to order, may be transferred by the payee by parol, with manual delivery, without indorsement.

The transferee, however, in such case, acquires only the rights he would have had, had the check been originally non-negotiable, *i. e.*, the right which the payee had in it at the time of the transfer.

Plaintiffs drew their check upon defendant's bank, payable to the order of M. O. & Sons, and delivered it to the payees, for their accommodation, and without restriction as to the use of it ; the payees delivered it unindorsed to N. B. & Sons, in payment of a prior indebtedness, and it was so applied. N. B. & Sons procured the check to be certified by defendant ; afterwards plaintiff notified defendant not to pay it ; defendant, however, paid it to N. B & Sons. In an action by plaintiffs to recover the amount so paid, as a balance of their deposits: *Held*, that at the time of the certification N. B. & Sons were the owners of the check, with the right to enforce it against the drawers, the existing debt being a sufficient consideration for the transfer ; that the certification, therefore, had the same legal effect as if the check had been properly indorsed ; that by the certification defendant became bound to pay ; and that therefore the action was not maintainable.

(Argued February 7, 1879 ; decided March 18, 1879.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of defendant, entered upon an order dismissing plaintiffs' complaint on trial. (Reported below, 12 Hun, 537.)

This action was brought to recover an alleged balance of a deposit account with the defendant.

The plaintiffs on December 1st, 1869, drew their ·check upon defendant's bank payable to M. Oppenheimer & Sons,

or order, for the sum of $738.88, and delivered it to the payees, for their accommodation, and without any restriction as to the manner of its use. On the same day the payees transferred it by delivery, and without indorsement, to N. Blun & Sons, to whom they were indebted for goods sold, and Blun & Sons procured it to be certified by the proper officer of the defendant on that day. Blun & Sons had previously received, on the sale of their goods to the payees, a check for $938.88 on a bank in Massilon, Ohio ; which was protested for non-payment on presentment, and notice was received by Blun & Sons, on the day when they received the plaintiff's check. The amount of the latter they then credited by indorsement upon the Massilon check. They also recovered the larger portion of the goods they had sold to Oppenheimer & Sons. But they omitted to reclaim others amounting to the sum of $425 in value, upon the credit and faith of the plaintiffs' check, which they had then received. After the certification plaintiffs notified defendant not to pay the check. The defendant, after that, paid the check to Blun & Sons, having first received from them a bond of indemnity.

*Nathaniel C. Moak*, for appellants. Defendant became a debtor to plaintiffs by reason of their deposit to the amount thereof, and the debt could only be discharged by payment to plaintiffs or their order, or by acceptance of their check in such manner and under such circumstances as to make it liable to the holder as against the countermand of plaintiffs. (*Weisser* v. *Denison*, 10 N. Y., 82; *Morgan* v. *Bk. of State N. Y.*, 11 id., 405; *Ætna Nat. Bk.* v. *Fourth Nat. Bk.*, 46 id., 82; *Nassau Bk.* v. *Broadway Bk.*, 54 Barb., 236, 240; *Morgan* v. *Bank*, 11 N. Y., 405; *Barnett* v. *Shelling*, 70 id., 496; *Tyler* v. *Gould*, 48 id., 682; *Duncan* v. *Berlin*, 60 id., 151; *First Nat. Bk.* v. *Whitman*, 94 U. S. R., 343; *Johnson* v. *First Nat. Bk.*, 6 Hun, 124, 126–127; *Boyce* v. *Brockway*, 31 N. Y., 491; *Justh* v. *Nat. Bk. of Commonwealth*, 56 N. Y., 478; *Doubleday* v. *Kress*, 50 N. Y., 410;

*Filley* v. *Gilman*, 34 N. Y. Sup. Ct., 339; *Wardrop* v. *Dunlop*, 1 Hun, 325; *Norton* v. *Edgar*, 65 Barb., 176.) The holders of the check had no right to the payment of it under the certificate against the notice of the drawers. (*Willis* v. *Green*, 11 Wend., 516; *Franklin Bank* v. *Ray-mond*, 3 id., 69; *Rayner* v. *Hoagland*, 39 N. Y. Sup. Ct., 15; Edwards on Bills [1st ed.] 286–287; *Chamberlain* v. *Gorham*, 20 J. R., 144; *Gilbert* v. *Sharp*, 2 Lans., 412; *Miller* v. *Ponder*, 55 N. Y., 325; *Bush* v. *Lathrop*, 22 id., 535; *Schepp* v. *Carpenter*, 51 id., 602.) The holders of the check had no superior equities to the payees. (*Nassau Bk.* v. *B'dway Bk.*, 54 Barb., 240.) The bank had no right to pay the check against the notice of plaintiffs, unless the holders had rights superior to plaintiffs, and which could not be controlled by them. (*First Nat. Bk.* v. *Boche*, 71 Penn. St., 213; *Arnold* v. *Post, etc.*, id., 287; *Justh* v. *Nat. Bk.*, 56 N. Y., 478, 483–484; *Laut* v. *Bk. North America*, 49 Barb., 221; *Ætna Nat. Bk.* v. *Fourth Nat. Bk.*, 46 N. Y., 82–88; *Schneider* v. *Irving Bk.*, 1 Daly, 500; S. C., 30 How. Pr., 190; *Stevens* v. *Com.' Ev. Bk.*, 3 Hun, 147; *Kelly* v. *Roberts*, 40 N. Y., 432.) Defendant did not discharge its debt by paying the money to the plaintiffs according to their order, it not having been indorsed by the payees. (*Mech. Bk.* v. *Stratton*, 36 How. Pr., 191; 3 Abb. Ct. App. Cas., 271; *Stevens* v. *Com. Ex. Bk.*, 3 Hun, 151; Byles on Bills [6th Am. ed.], 154, marg. p.; *Hariop* v. *Fisher*, 10 Com. B. [N. S.], 196–202–204; *Welsh* v. *German*, 42 N. Y. Sup. Ct.; *Dodge* v. *Nat. Ex. Bk.*, 30 Ohio St., 1; *Nat. Bk* v. *Nat. Mech. Bk.*, 55 N. Y., 211; *Dodge* v. *Nat. Mech. Bk.*, 20 id., 234; *Irving Bk.* v. *Weatherhead*, 36 id., 338; *Security Bank* v. *Nat. Bk.*, 67 N. Y., 469; *Marine Nat. Bk.* v. *Nat. City Bk.*, 59 N. Y., 67, 71–74.) Defendant did not discharge its debt by certifying the check. (*Mead* v. *Merchant's Bk., Albany*, 25 N. Y., 143; *Farmers and Merch. Bk.* v. *Butch. and Drovers' Bk.*, 16 id., 125; *Marion Nat. Bk.* v. *Nat. City Bk.*, 59 id., 75–76.) The check could not, after notice by plaintiffs, be indorsed

so as to change the rights of the parties. (*Whistler* v. *Foster*, 14 C. B. [N. S.], 248; Byles on Bills [6th Am. ed.], 154, marg. p.)

*A. R. Dyett*, for respondent. The delivery of the check by the payees to Blun & Sons passed the title to it. (*Folger* v. *Chase*, 18 Pick., 63.) Even if Blun & Sons took the check for a past indebtedness, they were entitled to recover upon it against plaintiffs, though they knew the check was given to the payees as a loan for their accommodation. (*Cole* v. *Saulpaugh*, 48 Barb., 104; *E. R. Bk.* v. *Butterworth*, 45 id., 476; *Grocers' Bk.* v. *Penfield*, 7 Hun, 279; 69 N. Y., 502; *Scepp* v. *Carpenter*, 51 id., 602.) The certification of the check, as between plaintiff and defendant, was an appropriation of so much of the former's funds to its payment, and defendant was liable to pay the check and estopped from disputing its validity. (*Cooke* v. *State Nat. Bk.*, 52 N. Y., 114, 115: 15 Wend., 640; 25 id., 411; 29 N. Y., 569, 570.)

FOLGER, J. The plaintiffs' appeal must rest for success upon the soundness of this proposition put forth by them. That in order to pass a good title to the check, so as to make N. Blun & Sons holders thereof against the plaintiffs, it should have been indorsed over to them in writing by M. Oppenheimer & Sons, the payees named in it; and that the defendant had no right to certify and pay it, until it was so indorsed. We have considered this proposition; and are of the opinion that it does not hold good in this case; and that the plaintiffs' appeal is without merit.

The check was an instrument in writing, which gave to the lawful holder, a right to demand and have a sum of money, or to recover damages for the non-payment thereof from some of the parties to it. It is, therefore, a *chose in action*. Such a *chose in action* is assignable; that is, the right which any lawful holder has thereby, may be transferred to another. This may be done as prescribed in the written instrument, if the *chose in action* be embodied in

.writing, and there is therein prescribed a mode. It may be done .in any other mode known to the law for the transferring of such rights; as by an independent written instrument, or by parol with manual delivery: (*United States* v. *White*, 2 Hill, 59; *Briggs* v. *Dorr*, 19 J. R., 95.) And, as between the assignor and assignee, the transaction is then complete and effectual, without notice to the debtor. (*Muir* v. *Schenck*, 3 Hill, 228.) At common law, the assignment of · a · *chose in action*, is regarded as an authority to the assignee to bring action upon it, in the name of the assignor. (*Welch* v. *Mandeville*, 1 Wheat., 233; S. C., 5 id., 277.) Nor is there any difference, in this respect, between bills of exchange, promissory notes, bankers' checks and the like instruments, and other *choses in action.* (*Jones* v. *Witter*, 13 Mass., 304; *Titcomb* v. *Thomas*, 5 Greenl., 282.) Bills and notes payable to order or bearer, and thus made negotiable by the terms of them, are thereby made " *assignable*," *i. e.* transferrable with the quality of carrying with the transfer the legal title to the transferee, and enabling him to sue upon them in his own name. (*Grant* v. *Vaughan*, ₹ Burr., 1516; *Douglass* v. *Wilkeson*, 6 Wend., 637.) Whereas, *choses in action* which did not have this quality, were once not transferrable so as to pass the legal title in them. The transferee got an equitable title only, and must have sued upon them, at law, in the name of his assignor. He was an assignee; not an indorsee. Yet, though negotiable instruments were not indorsed, nor otherwise transferred according to the terms of them, they still were *choses in action*, transferrable by delivery or other · mode of assignment, and the transferee took an equitable interest, at the least, in them. *Canfield* v. *Munger*, 12 J. R., 346–347; *Taylor* v. *Bates*, 5 Cow., 376.) . Since the adoption of the Code of Procedure, it matters not whether the assignee gets the legal as well as the equitable title. If he gets the whole interest, he may maintain an action in his own name. (Code [old], § 111; Code [new], § 449; *Hastings* v. *McKinley*, 1 E. D. Smith, 273; affd., 4 Seld. Notes, 19.)

Doubtless there should have been upon the check the written indorsement of the payees, to have saved to it, in the hands of Blun, its original character and quality of negotiable paper. Having been transferred without indorsement, Blun got the right only that he would have taken, had it been not negotiable at the start. But whatever right the payees had in the check, at the time when it was transferred to Blun & Sons, that right they could assign, and by the act of assignment did transfer. The effect of the transfer of the check, it having been without written indorsement, was no more than that the drawers of it had such right to refuse or prevent payment of it, as a maker of a non-negotiable instrument would have had, under the same state of facts. Grant, that such right was so much as that it would prevail against every one but an innocent transferee for a good consideration : Were not Blun & Sons, on the facts, such holders ? The check was delivered by the drawers to the payees, for them to use as they saw fit, for their own good. Grant, that before it was used in any way by Oppenheimer, it could have been reclaimed by the plaintiffs, or the payment of it effectually forbidden. It was used by him, with Blun, for the good of the payees. Grant, that it could have been reclaimed from Blun & Sons, before they had acted on the strength of it. It was not so reclaimed. By reason of the possession and seeming ownership of it in Oppenheimer, and the right in him, then existing, to have the money named in it from the defendant, Blun had taken it and applied it in payment, in part, of goods sold to the payees. Grant further, that the check was not at that time an assignment in law by the makers of so much of their funds on deposit with the defendant, so that they could by forbidding to the defendant the payment of it, have prevented the latter from paying it at the maker's charge. Before notice to stop payment, the defendant, on the presentation of it by Blun, had certified it as good. If Blun & Sons were then the holders and owners of it, with such right as that they could enforce it against the makers, the certification of it by the defendant

had all the legal effect which the same certification would have had, had it been indorsed by the payees. That legal effect is the same as if the defendant had paid the money upon it, with the proper indorsement upon it of the payees. By the certification of a negotiable check, properly negotiated, the depositary of the fund checked upon becomes liable to the owner of the certified paper, and is bound to have in readiness the money to meet it, from the fund drawn upon. When the check is not negotiable, or has not been indorsed, but has by assignment come into the hands of a lawful owner, who has a right to enforce it against the maker, the effect is the same. When a debtor has notice of the assignment of the *chose in action*, he may not make valid payment after that to the assignor. He has the right to promise to pay to the assignee. How do the relative rights of the plaintiffs and defendant and Blun & Sons, in the case in hand, differ in principle from the case stated? So that our case is narrowed to the question, whether Blun & Sons did acquire such a right in this check. It seems plain that they did. The rule to govern the transactions with this check, so far as it was accommodation paper, is not different from that which would control doings with an accommodation note. It is settled, that a holder of an accommodation note, without restriction upon him as to the mode of using it, may transfer it either in payment, or as collateral for an antecedent debt, and that the maker will have no defense against it, in the hands of an indorsee. The existing debt is a sufficient consideration for the transfer; and a new contemporaneous consideration need not be shown: (*Grocers' Bank* v. *Penfield*, 69 N. Y., 502.) The facts of this case brought this check within this rule. It was given by the plaintiffs to Oppenheimer, to use as money. There was no restriction upon the use of it by him. Even if the debt upon which it was applied was not contemporaneously, but before that, contracted, it furnished a good consideration for the transfer of the check. To be sure, the note in 69 N. Y. (*supra*) was negotiable, and was properly negotiated. But

we have already shown in what respects the lack of that quality affects the position of the parties. It does not turn aside the rule above stated from an application to this case. Blun & Sons became the lawful assignees and owners of the instrument, and entitled to have and enforce payment, and after the certification by the defendant, to have payment from it, at the charge of the plaintiffs.

The judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.