of floating indebtedness I have stated again and again that we could not be bound for any special amount, as, with the demands of an increasing business. or with the resources of a less active one, the floating indebtedness must inevitably fluctuate. We can only say that for any increase in floating indebtedness we shall show at least a corresponding growth in quick assets, and if, as you say, this is not satisfactory, a new issue is being raised which we cannot undertake to meet." Mr. Bull testifies that he had made that statement as to floating indebtedness to Mr. Untermyer more than once prior to the 2d of March, and Mr. Miller testifies that prior to the acceptance of the option, and prior to February 24th, he had told Mr. Untermyer that under no circumstances would he state to him the indebtedness of a running business. This testimony Mr. Untermyer does not deny. He does deny that any such statements were made by Mr. Bull at the meeting on the 10th of April. Referring to this testimony, the plaintiffs argue, and very sensibly it seems to me, that the rule that a warranty of quality or condition does not cover visible defects is applicable here, as, before the defendant accepted the option, he had fair and abundant notice by the explanatory notes and the statements of Bull and Miller that no warranty as to the floating indebtedness of the corporation was intended or would be given.

It is not necessary to discuss other points which are presented in the elaborate briefs of counsel. My judgment is that the defendant has failed to sustain the allegations of warranty and deceit set forth in his amended answer. and that the plaintiffs are entitled to judgment as demanded in their complaint.

Argued before BARTLETT, WOODWARD, JENKS, HIRSCHBERG, and HOOKER, JJ.

Edward M. Shepard, for appellants.
Guggenheimer, Untermyer & Marshall, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Hamilton Odell, Esq., referee; HOOKER, J., dissenting. Order granting extra allowance affirmed, without costs.

---

(94 App. Div. 331.)

MEUER v. PHŒNIX NAT. BANK.

(Supreme Court, Appellate Division, First Department. May 13, 1904.)

1. CHECKS—TRANSFER WITHOUT INDORSEMENT.
    Title to a check payable to a specified person passes by delivery without indorsement.

2. SAME—TITLE CONVEYED—EQUITIES.
    The transfer of a check by the payee by delivery without indorsement destroys its negotiability, and the transferee takes merely his transferror's title, subject to any equities between him and the drawer.

3. BANKS—CERTIFICATION OF CHECK—LIABILITY TO HOLDER.
    Negotiable Instrument Law, Jan., 1897, p. 756, c. 612, § 323, as amended by Laws 1898, p. 977, c. 336, § 29, provides that, where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance. Section 324 (page 756) provides that, where the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon. Section 325 (page 756) provides that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless it accepts or certifies the check. Section 79 (page 731) provides that, where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in

the transferee such title as the transferror had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferror; and section 112 (page 734) provides that the acceptor, by accepting the instrument, engages that he will pay it according to the tenor of his acceptance, and admits the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument. The payee of a check given to discharge an indebtedness due her transferred it without indorsement for consideration, and the transferee presented it at the bank, which certified it. *Held*, that the bank was liable, though it did not know who was the owner of the check when the certification was made.

McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Max Meuer against the Phœnix National Bank. From a judgment in favor of plaintiff, and from an order denying a new trial (86 N. Y. Supp. 701), defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Forsyth Wickes, for appellant.
Joel M. Marx, for respondent.

INGRAHAM, J. This action is brought to recover the amount of a check drawn by one Arthur Johns upon and certified by the defendant. Mr. Johns, who was an attorney at law, had collected for one Edla Muir a sum of money, and on December 12, 1901, drew his check upon the defendant, with whom he had an account, to the order of Edla Muir, for $1,303.65, and sent that check to the payee, who was at that time sick in a hotel in this city. The plaintiff, who was the brother-in-law of Mrs. Muir, and who had been in the habit of making advances to her in the absence of her husband, Dr. Muir, who was in Europe, and having loaned her $900 in addition to other sums of money represented by promissory notes, called upon her in the afternoon of Saturday, December 28, 1901. He was accompanied by his son-in-law, and found her confined to her bed. When the plaintiff went into the room, Mrs. Muir asked him whether he had any money, to which he replied in the affirmative. She then asked him to advance her four or five hundred dollars, to which the plaintiff replied: "You promised— You owe me $900, and you promised me, when you would get a check, you will give that check from your lawyers." In reply she said, "Yes; I got it," and sent her maid to the hotel office for the check, and gave it to the plaintiff, and he paid her $400, receiving the check in payment of the $900 that Mrs. Muir owed him and the $400 he then advanced. This testimony was corroborated by the plaintiff's son-in-law, who was present, and also by Mrs. Muir's maid, who got the check from the safe in the hotel office, and who was present at a part of the interview. There was also evidence tending to show that a sum of money amounting to about $400 was found after Mrs. Muir's death in her apartment. On the following day (Sunday) Mrs. Muir died. After her death Mr. Johns, the drawer of the check, having ascertained that the check was in the plaintiff's possession wrote to the bank stopping payment. That note was dated Monday, December 30th, and the evidence is that it was received by the bank on the morning of that day. Mrs. Muir left a will

appointing her husband her executor. Upon Dr. Muir's returning to this country, his wife's will was probated, when he was requested by the plaintiff to indorse this check; but, acting upon the advice of Johns, his attorney, he refused to indorse it, and thus the matter rested. The plaintiff, thus being the owner and holder of the check for value, about the 15th of January, 1902, sent it by his son to the defendant bank for certification. Upon presentation to the paying teller of the bank he certified it and returned it to the plaintiff's son, who returned it to the plaintiff. No questions were asked at the time the check was certified, the messenger simply handing the check to the paying teller, and the paying teller certifying it and returning it to the messenger without comment. Subsequently a demand was made upon the bank for the payment of the check, and the bank refused to pay upon the ground that it was not indorsed by the payee, but stated to the person presenting it that, if it was indorsed by the executor of the payee, the bank would pay the check. The executor of the payee having refused to indorse the check upon the ground that he was advised not to by his attorney, the drawer of the check, this action was commenced. None of these facts were seriously disputed.

The court below left it to the jury to say whether or not the plaintiff became a bona fide holder of the check for value, charging the jury:

"That is the first thing for you to consider in this case, because, if you reach the conclusion that the plaintiff in this case is not a bona fide holder for value of this instrument, you need go no further. The underpinning of his structure has been knocked out, and it must fall to destruction, unless he satisfies you, by a fair preponderance of credible evidence, because the burden is upon him in the first instance, that he is the bona fide holder for value."

The jury having found a verdict for the plaintiff, they must have found that the plaintiff was the owner of the check. Being the owner of the check, he presented it to the bank, who certified it without making inquiry as to who it was that presented it for certification; and the question is whether the bank is liable upon this certification to the holder of the check, at whose request it was certified. If the bank is liable to the plaintiff for the amount of the check, the other questions presented need not be considered. It must be borne in mind that the bank does not dispute its obligations to pay to the drawer of the check the sum of money represented by it. He had on deposit the amount of the check to his credit. When the bank certified his check, it appropriated so much of the amount that the drawer had on deposit for the payment of this check, and, so far as appears, has that amount now in its possession. Neither does the drawer of this check dispute the fact that he owed to the drawee the amount of money represented by it.

The questions that are usually presented when a bank disputes the certification of a check relate to the equities between the drawer and the drawee of the check, or between the drawer of the check and the bank, and of course in such case it would be necessary, in order to shut out these equities, to show that the holder of the check parted with value upon the faith of the certification; but, if by this certification there was an agreement to appropriate a part of the money then on deposit in the bank in payment of the check, I can see no reason why the right to that money does not vest in the plaintiff, irrespective of any question

of estoppel which would be presented by reason of his having parted with a consideration based upon the certification of the check by the bank. That the title to this check could pass by delivery without indorsement is settled beyond dispute, and while, by the transfer of the check, its negotiability was destroyed, so that the transferee received simply the title that the transferror had, which was subject to any equities that existed between the drawer of the check and the payee, still the title to the check passed by the transfer; and, upon the undisputed evidence here, Mrs. Muir had a good title to this check, and there are no equities which interfere with the plaintiff's right to recover. It is also well settled that the certification of a check is equivalent to the acceptance of a bill of exchange. As stated in Am. & Eng. Enc. of Law, vol. 5 (2d Ed.) p. 155:

"When a check is presented by the holder and certified, the certification constitutes a new contract between the holder and the bank. The drawer is released, and the bank assumes his place. It is as if the funds had been paid out to the holder, and redeposited to his credit."

And this rule is now a part of the Negotiable Instrument Law (chapter 612, p. 719, Laws 1897, as amended by chapter 336, p. 973, Laws 1898. Section 323 (page 756) provides that, "where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance." Section 324 (page 756) provides that, "where the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon." Section 325 provides that "a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." Section 79 (page 731) provides that, "where the holder of an instrument payable to his order transfers it for value without endorsing it, the transfer vests in the transferee such title as the transferer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferer"; and section 112 (page 734) provides that "the acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance; and admits: The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument."

By these provisions it seems to me that the solution of the question presented is free from doubt. The defendant had to the credit of the drawer of the check the amount represented by the check. The drawer of the check owed to the payee the amount represented by it, and in discharge of that obligation sent to the payee the check in question. The payee of the check, for a valuable consideration, delivered it to the plaintiff, who, under section 79 of the negotiable instrument law, thereby became vested with the title of the transferror of the check. By presenting this check to the bank for certification, and its certification by the bank, a new contract was made between the bank and the holder, by which there was substituted the obligation of the bank for that of the drawer of the check, and thereby the drawer became released from liability; and, as the payee of this check transferred it to the plaintiff, the plaintiff had a good title to the check, and the right to enforce it, when the bank, by its certification, accepted the check, and made a

contract with the holder promising to pay it. By the certificates the bank voluntarily assumed the obligation of the drawer, and agreed to pay the check to the plaintiff. The check and certification operated as an assignment of the funds to the credit of the drawer with the bank, and the bank became liable to the holder. Neg. Inst. Law, § 325. These rules are elementary, and in view of the express provisions of the negotiable instrument law, to which attention has been called, it is not necessary to refer to the authorities to support them.

The argument of the defendant is based upon three cases in the Court of Appeals of this state, neither of which, as I view it, presents the precise question here, although it is substantially determined in the first case referred to. The first case is Freund v. Importers' & Traders' Nat. Bank, 76 N. Y. 352. In that case the plaintiffs, on December 1, 1869, drew their check upon the defendant bank, payable to M. Oppenheimer & Sons, or order, for the sum of $738.88, and delivered it to the payees, for their accommodation, and without any restriction as to the manner of its use. On the same day the payees transferred it by delivery, and without indorsement, to N. Blun & Sons, to whom they were indebted for goods sold, and Blun & Sons procured it to be certified by the proper officer of the defendant on that day. After certification, the plaintiffs notified the defendant not to pay the check. The defendant, after that, paid the check to Blun & Sons, having first received from them a bond of indemnity. The plaintiffs then brought an action against the bank to recover the alleged balance of deposit represented by this check. The Court of Appeals held that the payee could transfer by indorsement, or in any other mode known to the law for transferring such rights, as by an independent written instrument, or by parol with manual delivery, and, as between the assignor and assignee, the transaction is then complete and effectual, without notice to the debtor; that, although a negotiable instrument was not indorsed or otherwise transferred according to its terms, it was still a chose in action, transferable by delivery or other mode of assignment, and the transferee took at least an equitable title in it; that since the adoption of the Code of Procedure it matters not whether the assignee gets the legal as well as the equitable title, as, if he gets the whole interest, he may maintain an action in his own name; that if Blun & Sons were then the holders and owners of the check, with such right that they could enforce it against the makers, the certification of it by the defendant had all the legal effect which the same certification would have had, had it been indorsed by the payees; that the legal effect is the same as if the defendant had paid the money upon it, with the proper indorsement upon it of the payees; that by the certification of a negotiable check, properly negotiated, the depositary of the fund checked upon becomes liable to the owner of the certified paper, and is bound to have in readiness the money to meet it, from the fund drawn upon; that when the check is not negotiable, or has not been indorsed, but has by assignment come into the hands of a lawful owner, who has a right to enforce it against the maker, the effect is the same; that, when a debtor has notice of the assignment of the chose in action, he may not make valid payment after that to the assignor; that he has the right to promise to pay to the assignee. And it was held that the bank was liable upon the certification, although the

check was an accommodation check, given to the payee without consideration; and that the payment by the bank to the holder of the check after such certification was a payment which bound the drawer.

The second case is Lynch v. First Nat. Bank of Jersey City, 107 N. Y. 179, 13 N. E. 775, 1 Am. St. Rep. 803. · It there appeared that one Wilder purchased of the plaintiff a diamond of the value of $500, and delivered to the plaintiff in payment therefor a check signed by himself upon the defendant to his own order, which was certified by the bank upon which it was drawn and payable through the American Exchange National Bank in New York. The check, however, was not indorsed by Wilder, and the bank refused to pay it. The check, when certified, was in the possession of the drawer, and was certified by the bank at his request. The chief judge of the Court of Appeals, in delivering the opinion of the court, said: "It therefore seems to us that the only question in this case is whether the bank could be made liable to pay to third persons Wilder's funds by any transfer of this check, except one evidenced by the indorsement of his name thereon;" that the acceptance of the check was made by the bank when, through its agent, it indorsed thereon a certificate of genuineness and directed its payment by the American Exchange Bank; that that operated as a promise to pay it upon presentation at the American Exchange Bank, bearing Wilder's indorsement; that "the obligation of the bank, as shown thereby, amounts to a representation that the drawer has funds in the bank with which to pay the check, and that it will retain and pay them to the holder through its agency in New York upon presentation there bearing the proper indorsement"; and that, as no contract was made with the plaintiff, the only contract being with Wilder to pay to the holder of the check when he had directed such payment by indorsement, the plaintiff could not maintain an action against the bank upon the indorsement. In referring to Freund v. Importers' & Traders' Nat. Bank, supra, the court said:

"It was held in Freund v. Importers' & Traders' Bank, supra, that a certification by the bank of a check in the hands of a holder who had purchased it for value from the payee, but which had not been indorsed by him, rendered the bank liable to such holder for the amount thereof. By accepting the check the bank took, as it had the right to do, the risk of the title which the holder claimed to have acquired from the payee. In such case the bank enters into contract with the holder by which it accepts the check and promises to pay it to the holder, notwithstanding it lacks the indorsement provided for; and it was accordingly held that it was liable on such acceptance upon the same principles that control the liabilities of other acceptors of commercial paper. In the case at bar the certification of the bank was made at the request of the drawer, and was subject to the condition imposed by him, plainly written in the check, that it should not thereafter be payable, except by his indorsement."

The third case is G. N. Bank v. Bingham, 118 N. Y. 349, 23 N. E. 180, 7 L. R. A. 595, 16 Am. St. Rep. 765. It there appeared that one Brown had an account with the plaintiff bank, and applied to the cashier of the bank to cash a certain draft drawn by him for $17,000, upon certain representations which were false; that Brown was a bankrupt and had no funds in the bank, except such as resulted from the credit given him upon the faith of the draft; that the cashier of the bank, relying upon such representations, cashed the draft, and placed the pro-

ceeds to the credit of Brown, whereupon Brown drew a check upon the bank for $5,000, which the bank certified; that Brown took this certified check to the defendant, who cashed it for him, whereupon Brown disappeared; that by mistake Brown failed to indorse the check when he delivered it to the defendants; that, while the defendants held this check unindorsed, the plaintiff demanded its return, and, upon their refusal to return it, an action to recover its possession was commenced. It was decided that the purchaser of a draft or check who obtains title without an indorsement by the payee holds it subject to all equities and defenses existing between the original parties, even though he has paid full consideration, without notice of the existence of such equities and defenses; that, the payee having taken title by assignment—for such was the legal effect of the transaction—the defense of the bank against Brown became effectual as a defense against a recovery on the check in the hands of the plaintiffs as well; that, as between the bank and Brown, Brown had no right to enforce the transfer of the check without indorsement, and the plaintiffs, who had acquired Brown's title to the check, could not recover.

It was not disputed in either of these cases that if the bank had certified the check at the request of the holder, who had a good title to it as against the payee, and where there were no equities between the drawer and the payee, or the drawer and the bank, the bank would be bound to pay the check to the holder at whose request it had been certified. Neither of these cases is an authority against the right of the plaintiff to enforce this contract made between the bank and the holder of the check by the certification. Nor can it be that the fact that the bank did not inquire who was the owner of the check when it certified it, or with whom it was making a contract to pay the check, can affect the legal liability of the bank to the person with whom the contract was made. If the certification of the check operated as an assignment of the amount on deposit by the drawer, the holder of the check became the creditor, and entitled to enforce the obligation of the bank to pay the amount on deposit. As was said in Freund v. Importers' & Traders' Nat. Bank, supra:

"If Blun & Sons were then the holders and owners of it [the check], with such right as that they could enforce it against the makers, the certification of it by the defendant had all the legal effect which the same certification would have had, had it been indorsed by the payees. That legal effect is the same as if the defendant had paid the money upon it, with the proper indorsement upon it of the payees. By the certification of a negotiable check, properly negotiated, the depositary of the fund checked upon becomes liable to the owner of the certified paper, and is bound to have in readiness the money to meet it, from the fund drawn upon. When the check is not negotiable, or has not been indorsed, but has by assignment come into the hands of a lawful owner, who has a right to enforce it against the maker, the effect is the same."

The drawer of this check, having been indebted to the payee, sent this check to discharge this indebtedness, and the payee having transferred for a valuable consideration the check to the plaintiff, who thereupon became the holder and owner thereof, and entitled to enforce it against the drawer, and the holder having presented it to the bank, the bank, upon certifying it, became the principal debtor, and liable to the legal holder of the check for the amount called for by it.

I think, therefore, there was a good cause of action in favor of the plaintiff against the bank upon this certified check which entitled the plaintiff to recover, and that the judgment and order appealed from must be affirmed, with costs.

VAN BRUNT, P. J., and HATCH and O'BRIEN, JJ., concur.

McLAUGHLIN, J. (dissenting). The plaintiff cannot hold the judgment which he has recovered unless the bank certified the check for him. In this the court is in entire accord. The real question, therefore, is whether the bank did in fact certify the check for the plaintiff; and I am unable to agree with the other members of the court that it did. The check was drawn by one Johns, payable to the order of Mrs. Muir, and when it was presented to the bank for certification it had not been indorsed by, nor was anything said to indicate to the certifying officer that it had been delivered to, her. The messenger who took the check to the bank for certification did not know the teller who certified the check, nor did the teller know him. Under such circumstances, I think we should hold that the certification was for the maker of the check, and not for the plaintiff, who happened to be the holder. Before a check can be said to have been certified for the holder, there must be something on the check itself to indicate that' it has been delivered by the maker to the payee, or else satisfactory information to this effect must be given to the bank. A certification of a check at the request of a maker adds to his obligation that of the bank, whereas a certification at the request of the holder, after the check has been delivered, releases the maker and all prior indorsers (First Nat. Bank of Jersey City v. Leach, 52 N. Y. 350, 11 Am. Rep. 708; 5 Am. & Eng. Enc. of Law, 1055); and this is upon the ground that the holder could take the money called for by the check, instead of the certification, if he so desired. While this distinction is of no great importance in the case presented, it is of the utmost consequence in commercial transactions, many of which are now carried on by means of certified checks. In the present case, if the certification were for the maker of the check, then, had the bank failed, the plaintiff could have called upon him to make the same good; but, if it were for the holder, the plaintiff alone would have sustained the loss. If I am correct in concluding that upon the facts the certification was for the maker, then it necessarily follows that the judgment must be reversed, because, when the check was certified, there was attached to it an implied condition that it would not be paid until the same was properly indorsed by the payee. Goshen v. Bingham, 118 N. Y. 349, 23 N. E. 180, 7 L. R. A. 595, 16 Am. St. Rep. 765; Lynch v. First Nat. Bank of Jersey City, 107 N. Y. 179, 13 N. E. 775, 1 Am. St. Rep. 803. Nor does this view, as it seems to me, conflict with Freund v. Importers' & Traders' Nat. Bank, 76 N. Y. 352. In that case Freund was a depositor in the defendant bank. He drew his check to the order of M. Oppenheimer & Sons, who, without indorsement, delivered it to N. Blun & Sons. N. Blun then indorsed upon the check the following: "M. Oppenheimer & Sons by N. Blun. N. Blun & Sons." It thus appeared upon the check itself that N. Blun was the holder, that the check was no longer in the possession of the maker, and that the payees,

M. Oppenheimer & Sons, had delivered the possession of it without indorsement to N. Blun. The bank, therefore, if it saw fit, could certify the check for him, notwithstanding the fact that it had not been indorsed by the payees; and this is all that case holds. It certainly falls far short of holding, where one who has obtained possession of a check, negotiable only by indorsement, sends it to the bank for certification by a messenger who does not know and who is unknown to the certifying teller, and the bank, nothing being said, certifies it, that that amounts to an agreement with the holder that the check will be paid when presented, irrespective of the indorsement.

There are several other errors alleged by the appellant, but the view which I entertain renders it unnecessary to here consider them.

I think the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.