McKINNON v. WESTERN DEVELOPMENT CO.

(Circuit Court of Appeals, Second Circuit. March 10, 1914.)

No. 169.

BANKS AND BANKING (§ 112*)—REPRESENTATION BY OFFICER—LIABILITY FOR CONVERSION.

Where a bank agreed to make a loan against certain collateral, and received the borrower's note and collateral, it was entitled to turn over the note and collateral to an officer of the bank, who made the loan personally, and, having done so, was not responsible for such officer's subsequent conversion of the collateral.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 271, 272; Dec. Dig. § 112.*]

In Error to the District Court of the United States for the Southern District of New York.

Action by the Western Development Company against John W. McKinnon, as stockholders' agent, etc., of the Bank of North America. Judgment for plaintiff, and defendant brings error. Reversed.

Underwood, Van Vorst & Hoyt, of New York City (John G. Milburn, J. Markham Marshall, and Alexander B. Siegel, all of New York' City, of counsel), for plaintiff in error.

Ferdinand E. M. Bullowa, of New York City (Frank H. Platt, of New York City, of counsel), for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. At a former trial of this case the court directed a verdict in favor of the plaintiff, assignee of Otto Heinze & Co., on the ground that the Bank of North America, for whose stockholders the defendant was agent, having agreed to loan that firm $126,000 against certain collateral, neither made the loan nor on demand returned the collateral. We reversed the judgment because the court had not permitted the defendant to show, if it could, that the bank did not agree to make the loan and had delivered the collateral to C. W. Morse, who did make it.

At the new trial it appeared that on October 14th, in the hard times of 1907, the firm of Otto Heinze & Co. were in urgent need of from $450,000 to $500,000 to take up outstanding loans and release valuable collaterals, among which was a loan from J. S. Bache & Co. for $126,-000. Otto Heinze applied to his brother F. A. Heinze, who was president of the Mercantile National Bank, for the loan. F. A. Heinze said that the bank would not make it unless it was participated in by some other financial interest. The brothers then went to the Bank of North America to see C. W. Morse, who was chairman of the executive committee of the Mercantile National Bank and vice president of the Bank of North America. F. A. Heinze had a private interview with Morse, Otto Heinze remaining outside the room. At this interview Morse gave his check to the order of F. A. Heinze individually for $126,000, and then told Otto Heinze that his firm would get the loan at the Mercantile National Bank the next day, and that he should send the collateral for the Bache loan to the Bank of North America. October 15th Otto Heinze made a collateral note payable on demand to the Bank of North America and sent it with the collateral to the bank. When the package was handed to the president of the bank he said the bank had never agreed to make the loan, and never would make it, and he handed the package to F. A. Heinze, then present, who immediately took it into Morse's office and delivered it to him.

The testimony left it in doubt whether Morse individually or the bank agreed to make the loan, but there is no doubt that Otto Heinze & Co. intended the collateral to secure the repayment of the loan, that Morse individually made it, and that Otto Heinze & Co. received it. Although Otto Heinze & Co. drew a check for $126,000 on the Bank of North America they never deposited it or presented it for payment. The Bank of North America did not indorse Otto Heinze & Co.'s collateral note, which went with the collateral into the hands of Morse.

The court charged the jury:

"What I can and must tell you is this: What you should do according to the different possibilities of your findings. Let us suppose that in the first place, you believe that in the interview in which Otto and Augustus and Morse were there, after lunch, it was understood that Morse individually should take the loan, and it should not be the Bank of North America. If that be so, then you will have to give a verdict for the defendant, because then the bank did not have anything to do with it. Otto understood he was liable to Morse. Let us suppose as a second possibility that it was left vague at that time; the transaction was undetermined from whom Otto was going to get the money; then you might determine that when he went to Augustus and let Augustus go into the room with Morse, he meant to agree to the arrangement as Augustus should make it with Morse. That is to say, you may treat the transaction as substantially a consent by Otto to let Augustus make the deal for him. In that case, if you believe the deal went through as Augustus said it went through, and it was to be personal, then Otto would be bound, and you must render a verdict for the defendant.

"There is a third possibility to the case. You may conclude that it is quite clear from the fact that Morse afterwards kept the note, when it came on the 15th, and from the other testimony, that the original agreement contemplated a loan by the bank, as far as Otto knew, and that Otto never gave any authority to Augustus to deal for him, but that the interview was a matter between Augustus and Morse individually. And yet you may conclude that Augustus is telling the truth, when he said that he and Morse arranged that Morse should take it over, and that when Morse paid him money in the form of the check, in performance of the loan, he meant it as a payment to the Mercantile Bank, and that the agreement was that the money should be paid to the Mercantile Bank.

"Now, if you should determine that, what would be the rights of the parties? Well, this is an assignable contract. If Otto made a contract for a loan from the bank—and, as I told you, it seems to me he did—and the bank the next day, before the loan had been made, or the same day, at once before any advance had been made, had assigned it to Morse in a formal way, Otto could not have objected to it. And if he had meant that the only person to whom he would intrust his security was the National Bank of North America, he was bound to indicate that at the time he made the contract, because unless there was some such indication, the contract would be assignable.

"So, you see, it did not take Otto's co-operation in that case to effect the assignment of the contract. It would have been a valid assignment if he had not known anything about it.

"You may conclude that Morse indicated his assent, in this conversation between himself and Augustus, that he should take it over personally, regardless of how the contract read, so far as Otto was concerned. And you may conclude that on the next morning the transactions between Curtis and Morse indicated that Curtis, the president of the bank, was quite willing that Morse should take it over; that, when he sent the securities in to Morse saying, 'We won't have anything to do with it,' in view of the fact that Morse had already advanced the money they both agreed, both Curtis for the bank and Morse for himself, that he should take over the transaction. Now, if that was the understanding between Curtis and Morse, then the only question in the case is whether, when Morse gave the check to Augustus, he was paying the money as Otto intended the money should be paid. Because if the contract is as Otto says it was, that the money should be paid directly to him, not deposited in the Mercantile Bank, a delivery of a check by Morse to Augustus would not be good. It would not be the delivery that Otto had stipulated he should get. But, if in the agreement between Otto and the bank, Otto expected that the money should be deposited or delivered to the Mercantile Bank for him, then I charge you that any delivery by Morse to Augustus was a good performance under that contract, unless you suppose that when he delivered that he said something to Augustus, or it was understood between them, that that check was not for that purpose at all, as the plaintiff suggests you might believe.

"That question is a very crucial fact in the case, and I am going to leave that to you. I am going to leave it to you and not express any opinion about that. The only testimony in the case is that that was the intention, and you have got to decide that.

"If you determine that that is what was done, then the plaintiff cannot recover. But, if you determine either that Otto expected to get the money some other way, or that Morse, when he gave him the money, had no intention to pay it to the bank or to Augustus as an officer of the bank, then, you will have to find a verdict for the plaintiff."

In accordance with the last paragraph of the foregoing, the jury found a verdict in favor of the plaintiff for the value of the collateral as of October 22, 1910, the date of demand and refusal, $160,903 with interest at 6 per cent. to the date of the verdict, November 21, 1912, $20,112.50, aggregating $181,012.50. But we discover no testimony whatever that Morse paid the $126,000 to F. A. Heinze for any other purpose than to enable Otto Heinze to get accommodation for the amount at the Mercantile National Bank. Any conclusion to the contrary was founded on pure conjecture. The result is extraordinary, because it takes no account whatever of the loan received by the plaintiff from Morse October 14, 1907, of $126,000, with interest at 6 per cent. from date to November 21, 1912, which would aggregate the sum of $165,000.

If the bank were to pay the judgment and Morse collected his loan out of the collateral in his hands, the plaintiff would receive the full value of its collateral from the bank and a loan of $126,000, fully paid out of its collateral in Morse's hands, with a possible claim against him for a surplus. On the other hand, if Morse were to sue on the collateral note, the plaintiff would, on payment of it, get back the original collateral and at the same time have its full value from the bank.

Assuming that the bank did agree to make the loan against the collateral as the plaintiff contends, it had the right as pledgee to turn over Otto Heinze & Co.'s note with the collateral to Morse, who did make the loan personally. The bank would not be responsible for any conversion by him of the collateral. Goss v. Emerson, 23 N. H. 38; Bank v. Davis, 113 Ga. 341, 38 S. E. 836, 84 Am. St. Rep. 248. The fact that it did not indorse the note makes no difference in this case. Morse had the equitable title to it and the absence of indorsement only left him subject to any equities which the plaintiff might have had against the Bank of North America, and none are suggested. Freund v. Bank, 76 N. Y. 352. The court erred in not directing a verdict in favor of the defendant.

Judgment reversed.