Nassau Bank *v.* Broadway Bank.

———•●•———

## THE NASSAU BANK *vs.* THE BROADWAY BANK.

A check, after having been indorsed by the payee and another person, was presented at the bank, and certified to be "good." Subsequently, the drawer, discovering that he had been defrauded, directed the bank not to pay the check; and when it was presented for payment, the latter wrote across its face, "payment stopped," and returned it to the payee. The latter, after erasing the words "payment stopped," so that they could not be read, and affixing a revenue stamp over the erasure, transferred the check to another person, through whom the plaintiff received it in deposit for collection, in the ordinary course of business, in good faith, without knowledge or notice of the circumstances, and without sufficient appearing on its face to put the plaintiff on inquiry. *Held* that the plaintiff was to be deemed a *bona fide* holder of the check for value, and entitled to recover the amount thereof from the drawee.

APPEAL from a judgment entered upon the report of a referee.

The action was brought upon a check drawn by R. Maplesden, upon the defendant, payable to the order of

Nassau Bank *v.* Broadway Bank.

A. C. Baker, and indorsed by said Baker and one Burnham, and certified by the defendant to be "good."

The defendant, by its answer, *First.* Admitted that the plaintiff and the defendant were corporations, as in the complaint alleged, and that a check similar to the one in said complaint described, and which the defendant believed to be the same, was drawn by Reuben Maplesden, in the complaint described, and delivered to one Zeno Burnham, but without any consideration whatever.

*Second.* The defendant denied that Burnham delivered the same to one Alvan C. Baker, or that the same was ever delivered to the said Baker; and the defendant further denied that the said Alvan C. Baker ever indorsed the same, or delivered the same to any person whatever.

*Third.* The defendant denied that the said check at any time came lawfully into the possession of the plaintiff, or that the said plaintiff gave any consideration whatever therefor; but, on the contrary, the defendant alleged, upon information and belief, that the plaintiff took the same without any consideration, and with full knowledge and notice that the same was of no value whatever.

*Fourth.* The defendant alleged that before the presentment of said check to the defendant for payment, the defendant was ordered and directed by the said Maplesden not to pay the same, and was duly notified and informed, by the said Maplesden, that said check was obtained by the false and fraudulent representations, and in the manner thereinafter set forth, and without any consideration therefor. That thereupon the defendant refused to pay the said check, and marked across the face thereof the words "payment stopped," in writing, and the same was returned to the said Burnham, who claimed to be the owner and holder thereof.

*Fifth.* The defendant further alleged, in substance, that the said check was given in part payment for furniture, &c., purchased by Maplesden at a "mock auction" con-

ducted by Burnham, at which the said Maplesden was cheated and defrauded by means of the false representations and devices of the said Burnham and his confederates. That said Maplesden, as soon as he discovered that he had been cheated and defrauded, demanded the return of said check from Burnham, and gave him notice that he would not receive any of said goods, and he has not at any time received or accepted any of said goods, and he has not received any consideration whatever for said check. And the defendant further alleged, upon information and belief, that the plaintiff was duly notified of, and had full knowledge of, all the facts herein set forth, at the time of receiving the said check; that it was duly notified the same had been fraudulently obtained from the said Maplesden, and was of no value, and the said plaintiff did not give any consideration therefor. That the plaintiff was not the lawful owner and holder of said check, and the defendant was not indebted thereon in any sum whatever to the said plaintiff.

The referee (John T. Hoffman, Esq.) found the following facts : 1st. The plaintiff and defendant are banking corporations, organized pursuant to an act of the legislature of the State of New York, entitled "An act to authorize the business of banking," passed April 18th, 1838, and the acts amending the same.

2d. On the 25th day of February, 1863, at the city of New York, one R. Maplesden made his check in writing, bearing date on that day, directed to the defendant, to pay to Alvin C. Baker or order the sum of $500, and delivered the same to the said Baker.

3d. The said defendant, about the day of the date of said check, certified in writing upon the face thereof, that the same was good.

4th. The said Baker indorsed the said check in blank; the same was afterwards indorsed in blank by Zeno Burnham, and being so indorsed, afterward, and on or about

the 2d day of June, 1863, came into the possession of the plaintiff, who then became, and at the time of the commencement of this action was, the lawful owner and holder thereof.

5th. The equities were such, as between the said Alvan C. Baker the payee, Zeno Burnham his indorsee, and the said Maplesden the maker of said check, that neither the said Baker nor the said Burnham could recover upon said check, against said Maplesden, but the plaintiff received said check in the ordinary course of business, in good faith, for value, without notice of such equities, or of any facts sufficient to put them upon inquiry in relation thereto.

6th. After said check was made and certified as above mentioned, and while the same was held by the payee thereof, the defendant was requested by the maker thereof not to pay the same, for the reason that the consideration thereof had failed; and after such request, and while the payee held the said note, it was presented by him to the said defendant for payment, and the defendant refused to pay the same; and having it in possession, caused to be written across the face thereof the words "payment stopped," and returned the same to the said payee; and afterwards, and before the said check came into the possession of the plaintiff, the said words "payment stopped" were erased, so that the same could not be read, and a revenue check affixed over said erasure. The plaintiff, when it received said check, had no knowledge or notice of any of said circumstances, nor was there sufficient appearance upon the face of the said check to put it upon inquiry in relation to the same.

7th. After the plaintiff became the holder and owner of said check as above mentioned, and on or about the 3d day of June, 1863, it caused payment of said check to be demanded of said defendant, which was refused.

8th. The interest on said check from the date of said presentation to the date of the report was $40.83, and the

principal amount of said check, as well as said interest, was wholly due and unpaid.

The referee's conclusion of law, upon the facts aforesaid, was: That the plaintiff was entitled to judgment against the defendant, for said principal and interest, amounting together to the sum of $540.83.

The following reasons were given by the referee, for his decision: "It is admitted that the equities were such, between the payee of the check in suit, his indorsee Burnham, and the maker, that neither the said payee or indorsee could recover thereon against the maker. It was not denied that the defendant, the Broadway Bank, could avail itself of the same equities by way of defense to an action brought by either the said payee or his indorsee, and that those equities would defeat this action unless the plaintiff was found to be a *bona fide* holder of the check, without notice of such equities.

The question, therefore, for me to determine, is whether the plaintiff is such *bona fide* holder.

Upon the evidence in the case it appears that the check, when in the hands of the payee, and after it had been accepted by the defendant, was presented to the defendant for payment, and the defendant (having been requested by the maker not to pay it) wrote upon it the words 'payment stopped,' and returned it to the presenter; and that afterwards, and before it came into the possession of the plaintiff, the words 'payment stopped' were erased from the face of the check, and an internal revenue stamp affixed over the same.

And it further appears as a distinct admission, that the check was taken by the plaintiff in the ordinary course of its business, on June 2, 1863; and that the plaintiff had no notice or knowledge of the circumstances under which the check was made, or of the equities affecting the same; or that 'payment stopped' had been written thereon, or

Nassau Bank *v.* Broadway Bank.

erased, other than appeared upon the face of the check itself.

In order to make one a *bona fide* holder of commercial paper, he must receive it in the ordinary course of business, for value, and without any notice of facts tending to impeach the character or validity of the paper, as between the original parties.

That this check was received in the ordinary course of business is admitted, as I have stated. That it was received for value appears by the testimony of the teller, Mr. Brundage, who swears that when deposited by Vogt & Co. the plaintiff credited them with the amount; that after its receipt it was, in the course of business, after its passage through the clearing-house, returned by the runner of the Broadway Bank to the plaintiff, who paid the Broadway Bank the amount; that the plaintiff thereupon called upon their depositors to repay the same, which was refused, and thereupon this suit was brought.

At the time this suit was commenced therefor, the plaintiff had paid the full face of the check for the check; the plaintiff, for months after the commencement of this action, counted the check as cash, and charged it to the account of the depositors, and it now stands charged to their account; this latter fact, however, cannot be material in this action, because it is to be determined by me under the pleadings, upon the facts as they existed when the suit was commenced, and upon the law applicable thereto.

Even if the depositors are to be considered as having paid the plaintiff the amount of the check after suit brought, so that they became thereby the real parties (plaintiffs) in interest, the action still proceeds as if there had been no transfer of interest. (*Code,* § 121.) The plaintiff, therefore, having received the check in the usual course of business, and for value, it remains only to inquire, under the admission made upon the trial, and the evidence offered, whether sufficient appeared upon the

face of the check to put it on inquiry in relation to its character or validity, as between the original parties. Upon this question I have before me the check itself, and the testimony of Mr. Brundage. Mr. Brundage says, when he received it on deposit it was comparatively clean, none of the blue marks upon it which now appear, and not torn as it is now, and stamped precisely as now. Mr. Brundage was the teller of the plaintiff, accustomed to receive and critically examine money, checks, &c., taken on deposit. And it is evident from his testimony that there was nothing about the appearance of the check which excited an inquiry on his part. He was not asked whether he noticed that the date of the check was some three months anterior to its being deposited. Whether he did or did not notice it is not perhaps material, but the defendant insists upon that fact as of great importance. I do not agree with him. I think, in this particular, a certified check is different from any other. It is considered by many holders in the light of a certificate of deposit. It is the obligation of the bank, and as such, often kept and held for long periods in the place of money. The lapse of time therefore was not, I think, calculated to attract any attention, or to put the plaintiff upon the alert as to the character of the check. The words ' payment stopped' had been written across one end of the face of the check, near the vignette, nowhere near the signature of the maker, or the certification by the bank. It had been carefully erased, and over it a revenue stamp had been pasted. A careful observer would perhaps have noticed that something had been erased, but what it was he could not tell. It was not any part of the check itself, neither as to date or amount, or parties or certificate; the whole body of the check was perfect, the signatures correct, the certificate of the defendant full and clear upon the face, and that, of itself, would be sufficient to withdraw attention from the appearance of the erasure, So

---

Nassau Bank *v.* Broadway Bank.

---

far as I can judge, there was nothing about it calculated to excite attention, much less suspicion.

It appears, also, that a suit had been commenced upon this check in the marine court before the plaintiff had received it, but the plaintiff knew nothing of that. The judge had written upon the back of it, very indistinctly, 'Plff. Ex. A.—H. A.' I think a lawyer would have known at once on looking at it that the check had been an exhibit in some suit, but I do not believe any one else would have guessed what the writing meant, or would have paid any attention to it. I am, therefore, of the opinion that there was not sufficient appearing upon the check itself to put the plaintiff upon inquiry as to its character; it is in law a holder for value, and I cannot doubt received it in entire good faith. I cannot see any force in the defendant's position that the erasure of the words 'payment stopped' was a forgery. The Broadway Bank had no legal right to put these words upon the check, and when it did so, and handed it back to the party presenting it, he had a legal right to erase them, and restore the check to the condition in which it was, thus leaving all parties to their legal right and remedies. The act of the payee and his indorser was a dishonest and dishonorable act, and helped them pass off the check upon innocent parties, but it was not forgery. Hard as this conclusion may be against the maker of the check, it is, in my judgment, unanswerable. He suffered the consequence of the rule which gives to *bona fide* holders of commercial paper the right to enforce its collection, and it leaves him to his remedy against the person who defrauded him."

The defendant excepted to the referee's conclusions of fact and of law, and appealed from the judgment.

*Samuel Brown*, for the appellant. I. On the evidence that the defendant canceled its obligation on the check, "as was the custom;" and that the obligation of the defend-

ant was subsequently renewed by the fraud of Burnham, and the check put in circulation by him, it became the duty of the plaintiff to show that it was a *bona fide* purchaser for value. (*Edwards on Bills*, 319.) (1.) The plaintiff did not attempt to show that Voght & Co. ever drew upon the check, or that the plaintiff ever paid them any thing on account of it. (2.) But it appears that the plaintiff was not a purchaser for value, and that it parted with nothing on the faith of the check. That it received it on deposit for collection, entering it as cash in anticipation of its payment, but finding it was repudiated by the defendant, returned it to its depositors, and demanded their check to cancel the credit, and, failing to obtain Voght & Co.'s check, it erased the credit by charging the check to them. (3.) The crediting Voght & Co. with the amount of the check on the books of the bank, was not, as stated by the referee, parting with value. (*Payne* v. *Cutler*, 13 *Wend.* 605.) The credit was obtained either through mutual mistake, or by fraud on the part of Voght & Co. In either case it was the duty of the plaintiff to cancel the credit on discovering the fact, and charge the check (as they did subsequently) back to its depositors. This was decided in the case of *The Fulton Bank* v. *The Phœnix Bank*, (1 *Hall's Rep.* 562. *Garland* v. *Salem Bank*, 9 *Mass.* 408. *Peterson* v. *The Union National Bank*, 52 *Penn. R.* 206.) (4.) The repayment to the defendant was only returning to it the amount it had been improperly charged with in the clearing-house, and was of itself an admission on the part of the plaintiff that it had no claim against the defendant upon the check. (5.) The teller had no right to credit the check as cash; but the credit remained idle, Voght & Co.'s account being good for the check after it had been returned by the defendant. If any money was ever advanced by the plaintiff on the check, of which there is no proof, it was advanced after notice from the defendant, and with full knowledge

Nassau Bank *v.* Broadway Bank.

of the character of the check. (*West* v. *American Exchange Bank*, 44 *Barb.* 176. *McBride* v. *Farmers' Bank*, 26 *N. Y. Rep.* 450. *Stalker* v. *McDonald*, 6 *Hill*, 93.)

II. The plaintiff had sufficient notice from the appearance of the check itself to put it upon inquiry before receiving it from its depositors, and is, therefore, chargeable with full notice of the equities, because: (1.) The check was four months past due. (*Gough* v. *Staats*, 13 *Wend.* 549. *Losee* v. *Dunkin*, 7 *John. R.* 70.) (2.) It bore marks of alteration in the traces of the erasure of the words " payment stopped" appearing on each end of the revenue stamp. (3.) The revenue stamp was affixed in an unusual and improper place on the check. (4.) The word "pay" was erased from the check, a most material alteration, and the body of the check was not perfect. (5.) It was indorsed in the handwriting of Judge Hearne, "Plff's Ex. A.—H. A." In *Wiggin* v. *Bush*, (12 *John.* 310,) a note was dated "24th May," and indorsed " 22d Apl." It was held that the mem. "22d Apl." was sufficient to put the purchaser upon inquiry. In *Brown* v. *Taber*, (5 *Wend.* 567,) the note had a mem. on the back made by the clerk of the bank. That was held to be sufficient notice. In *Powler* v. *Prantly*, (14 *Peters' R.* 318,) the figures 169 appeared in pencil-mark on the face of the note. Held sufficient notice. (*Approved*, *Goodwin* v. *Simonson*, 20 *How. S. C.* 352, 465, 6.) In *Claflin* v. *Farmers and Citizens' Bank*, (25 *N. Y. Rep.* 293,) the check was certified by the drawer as president of the defendants. Held, notice. In the case now before the court, more suspicious marks and memoranda appear on the face of the instrument than are to be found upon any or all the instruments referred to in the reported cases. When the defect or infirmity appears on the face of the instrument, the question is one for the court to determine, from the appearance of the check itself. (*Birdsall* v. *Russell*, 29 *N. Y. Rep.* 220.)

III. The erasure of the words "payment stopped," whereby the defendant had canceled its certification while the check was in the hands of Burnham, was a material alteration of the instrument, by which means a renewal of the liability on the part of the defendant was sought to be created, and amounted to an actual forgery of the certification. The plaintiff could derive no title to the check, nor hold the defendant on such a certification. (2 *Parsons on Bills and Notes*, 583. *Brown &c.* v. *Westcott*, 3 *Barb.* 374. *Talbot* v. *Bank of Rochester*, 1 *Hill*, 295.)

*C. A. Arthur*, for the respondent. Upon the statement of facts agreed upon between the parties, the only question to be determined upon the trial was, whether the plaintiff was a *bona fide* holder of the check, without notice of the equities existing between the maker of the check and the payee.

I. The proof shows the plaintiff to be such *bona fide* holder. (1.) It is admitted that the check was taken by the plaintiff, in the ordinary course of business, on the second day of June, 1863, and that the plaintiff had no notice or knowledge of the circumstances under which the check was made, or of any equities affecting the same, or that payment had ever been stopped, other than appeared upon the face of the check itself. (2.) When the check was received by the plaintiff there was nothing upon its face to put the plaintiff upon inquiry, in relation to its character or validity, as between the original parties. Mr. Brundage, the teller, says that when he received the check for deposit, it was comparatively clean, none of the blue marks upon it, and not torn as when produced at the trial, and stamped as it was then. The referee had the check before him—it being offered in evidence upon this point—and he found that there was nothing upon the check itself to put the plaintiff upon inquiry as to its character,

and that it could not be doubted that the plaintiff received it in entire good faith. The referee describes the check as it was when produced before him at the trial. The court will not interfere with this finding of fact of the referee, as to the condition and appearance of the check at the time the plaintiff received it. There was nothing to put the plaintiff on inquiry in the fact that the date of the check was some three months anterior to its being received by the plaintiff. It was a *certified* check, which being considered in the light of a certificate of deposit, as the obligation of the bank, is often kept and held for long periods, in the place of money. The *bona fide* purchaser of commercial paper is not bound upon his peril, to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance. "He does not owe to the party who puts negotiable paper afloat, the duty of active inquiry, to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence." (*Per Curiam, in Magee* v. *Badger et al.,* 34 *N. Y. Rep.* 249. *Steinhart* v. *Boker,* 34 *Barb.* 436. *Goodman* v. *Simons,* 20 *How. U. S.* 323. *Murray* v. *Lardner,* 2 *Wall. U. S.* 110.) (3.) That the check was received *for value,* appears by the testimony of the teller, Mr. Brundage. And see opinion of the referee.

II. The drawer of the check could not stop payment after the check had been certified, and the defendant had thereby accepted and bound itself to pay it. The acceptor of a check cannot repudiate its contract to pay, on the ground of any failure of consideration, or other equitable defense existing in favor of the drawer, as against the payee. The undertaking of the defendant, the Broadway Bank, was with the *bona fide* holder of the check, whoever he might be. The certification was equivalent to *payment,* so far as the drawer was concerned, and the endeavor of

---
Levy *v.* Hart.
---

the defendant to deface the paper, by putting the words "payment stopped" upon the check when presented, after such certification, is indefensible, without legal right or authority, and the party presenting the check had a legal right to erase these words and restore the check to the condition in which it was. (*Claflin* v. *The Farmers and Citizens' Bank*, 25 *N. Y. Rep.* 300. *Meads* v. *The Merchants' Bank of Albany, Id.* 143.)

*By the Court*, GEO. G. BARNARD, J. The plaintiffs were holders for value. It was so found by the referee, and the testimony clearly bears him out in his conclusion. His opinion covers every point raised, and does not require any additional views.

The judgment should be affirmed.

[NEW YORK GENERAL TERM, June 7, 1869. *Clerke, Cardozo*, and *Geo. G. Barnard*, Justices.]