nonresidence. It is provided that a decree may be made, in the discretion of the surrogate, requiring a testamentary guardian to give security in a case where a person so named as executor can entitle himself to letters testamentary only upon giving a bond, "but not otherwise."

In view of the course of legislation respecting testamentary guardians, and the clear distinction which has always been observed between them and the so-called general guardians appointed by the surrogate, we are clearly of the opinion that section 2746, Code Civ. Proc., under which the surrogate acted in inserting in the present decree the provision appealed against, applies only to general guardians appointed by the surrogate, and not to testamentary guardians, such as is the appellant.

As to the latter the Surrogate's Court has no further jurisdiction than is conferred by statute (Matter of Hawley, 104 N. Y. 250, 10 N. E. 352), and from then the surrogate has no authority to require security, except under the circumstances prescribed in section 2853 above referred to.

The decree, in so far as it is appealed from, is therefore reversed, with costs to the appellant payable out of the estate. All concur.

---

(156 App. Div. 712.)

CARNEGIE TRUST CO. v. FIRST NAT. BANK OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. May 16, 1913.)

1. BANKS AND BANKING (§ 145*)—CERTIFICATION—EFFECT.

While the certification of a draft or check creates a new contract between the holder and the certifying bank, which in effect obligates the bank to pay the check, the bank may be relieved of liability when the rights of no third persons have intervened, and the holder has not changed his position in reliance thereon, if the certification was induced by mistake.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 419–433; Dec. Dig. § 145.*]

2. BANKS AND BANKING (§ 145*)—CERTIFICATION—EFFECT.

In certifying a check a bank only warrants the genuineness of the signature, the drawer's capacity to sign, and that he has on deposit sufficient funds to pay the check, which the bank undertakes shall not be withdrawn or applied to any other purpose; but it does not warrant the title of the payee or his right to collect. Consequently, where the payee had not changed his position, and the rights of no third persons had intervened, the certification of a check given an insolvent payee does not obligate the bank to pay it, when the payee was indebted to the drawer in excess of the amount of the check, and the certifying bank did not know those facts.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 419–433; Dec. Dig. § 145.*]

3. BANKS AND BANKING (§ 167*)—COLLECTIONS—INSOLVENCY—RIGHT OF SET-OFF.

Where an insolvent bank was indebted to one of its correspondents in excess of the amount of checks sent for collection, that indebtedness may be set off as against a check given in payment of the collections.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 579–582; Dec. Dig. § 167.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. PLEADING (§ 177*)—DENIAL—ADMISSION.
    The failure to deny allegations in a counterclaim is an admission thereof.

    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 354, 355; Dec. Dig. § 177.*]

    Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by the Carnegie Trust Company against the First National Bank of the City of New York. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Joseph M. Hartfield, of New York City, for appellant.
Frank M. Patterson, of New York City, for respondent.

SCOTT, J. Although this judgment is in form one founded upon a verdict, there is no dispute as to the facts, and only a question of law is involved.

The defendant is sued upon its certification of a check for $2,953.92 drawn upon it by the German National Bank of Cincinnati in favor of plaintiff. The check represented the proceeds of certain checks owned by plaintiff, which it had sent to the Cincinnati bank for collection. The check was dated January 5, 1911, and was received at the Carnegie Trust Company, by mail, before banking hours on the morning of January 7, 1911. At that time the plaintiff had become insolvent, and the superintendent of banks had taken charge of it and was proceeding to liquidate its affairs under the provisions of section 19 of the Banking Law (Consol. Laws 1909, c. 2). The person representing the superintendent of banks was the deputy superintendent, who, finding the check in suit in the mail addressed to plaintiff, at once sent it by messenger to plaintiff for certification, and plaintiff accordingly certified it. The said deputy superintendent made no examination of plaintiff's books to ascertain the state of the account between plaintiff and the Cincinnati bank. If he had done so, he would have discovered, as was the fact, that the plaintiff was indebted to the Cincinnati bank in a much larger amount than was called for by the check in suit.

Within an hour or so after the check had been certified, defendant received telegraphic instructions from the Cincinnati bank to stop payment upon the check, whereupon defendant promptly notified plaintiff of the purport of these instructions. When the check was presented for payment, the defendant refused to pay it. It was admitted that the check had not been negotiated to any holder in due course, was and is in the possession of the plaintiff, and of the superintendent of banks as liquidator, that the rights of no third parties in respect of said check or the acceptance thereof had intervened, and that, when the German National Bank of Cincinnati filed its claim against plaintiff (as it subsequently did), it offered to deduct from the amount due to it from plaintiff the sum represented by said check.

[1] The respondent relies upon the broad proposition, for which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

there is abundant authority, that a certification of a check or draft creates a new contract between the holder and the bank which makes the certification, the effect of which is to impose upon the bank certifying it an obligation to pay the check to the holder. But this rule is subject to the qualification that if the new contract evidenced by the certification has been induced by mistake, and the rights of no third parties have intervened, and the holder has lost nothing, nor changed his position in reliance upon the certification, the certifying bank may be relieved from liability. Irving Bank v. Wetherald, 36 N. Y. 335; Mt. Morris Bank v. 23rd Ward Bank, 172 N. Y. 244, 64 N. E. 810.

[2] In accepting a draft or certifying a check, a bank acts, in a sense, as the agent of the drawer; that is to say, it warrants the genuineness of the drawer's signature and his capacity to sign, and represents that he has on deposit with the acceptor sufficient funds to pay the draft or check, which funds it undertakes shall not be withdrawn or applied to any other purpose than the payment of the check or draft. It does not, however, warrant the title of the payee or his right to collect the check. The obligation to pay the check or draft upon presentation is therefore a qualified one, which becomes absolute if the paper passes into the hands of a third party bona fide, or if the holder changes his position to his disadvantage in reliance upon the certificate or acceptance. Clews v. Bank of New York Nat. Banking Ass'n, 89 N. Y. 419, 42 Am. Rep. 303; White v. Continental Bank, 64 N. Y. 316, 21 Am. Rep. 612.

[3] In the case at bar there can be no doubt that, upon the insolvency of the Carnegie Trust Company, the Cincinnati bank had a right to set off the amount of the check in question, which it owed plaintiff, against the much larger amount which the Carnegie Trust Company owed to it. Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059; Hughitt v. Hayes, 136 N. Y. 163, 32 N. E. 706. The facts which were unknown to defendant, but were known to or within the knowledge of the deputy superintendent of banks, were that the Carnegie Trust Company was insolvent, and that it owed to the Cincinnati bank a large balance on account, so that the latter bank, after the happening of the insolvency, did not in fact owe the Carnegie Trust Company the sum represented by the check in suit.

[4] The plaintiff now claims that no right to set-off ever accrued to the German Bank of Cincinnati, because the checks sent to that bank belonged to customers of the Carnegie Trust Company, and were sent to the Cincinnati bank merely for collection, whence it is argued that the German Bank never acquired title to such checks. This objection to the right of set-off is not presented by the pleadings nor the proof. On the contrary, the plaintiff admits (by not denying) that the checks were *owned* by the Carnegie Trust Company.

The judgment appealed from must be reversed, and, since the essential facts are incapable of being changed upon a new trial, the complaint must be dismissed, with costs to the appellant in all courts.

INGRAHAM, P. J., and McLAUGHLIN and CLARKE, JJ., concur.

LAUGHLIN, J. (dissenting). It appears that from time to time prior to the 5th day of January, 1911, the plaintiff "sent for collection" to the German National Bank of Cincinnati, Ohio, checks or drafts drawn upon banks and individuals, which it is admitted by the pleadings had been received by the plaintiff and were owned by it, upon which said bank had collected on the day last mentioned the sum of $2,953.92, and, although it there had a deposit account with plaintiff, with a balance to its credit in a much larger amount, it drew its check therefor, under date of January 5, 1911, to the order of the plaintiff, on the First National Bank of the City of New York, with which it also had a deposit account. That check was received in New York on the morning of January 7, 1911, before banking hours, by the deputy superintendent of banks, representing the state superintendent of banks, who had just taken possession of the plaintiff. Under the supervision of the deputy superintendent of banks, the mail addressed to the plaintiff was opened, and checks for more than $1,000 payable to it (plaintiff) were, by his direction, presented to the local banks, on which they were drawn, for certification. The check in question was presented to the defendant for certification, pursuant to this direction, at or shortly after 10 o'clock, and it was duly certified. Prior to so certifying the check, the defendant was aware of the fact that the superintendent of banks had closed and had taken possession of the plaintiff for the purpose of liquidation. An examination of the records of the plaintiff on that morning would have disclosed the fact that plaintiff had a balance on deposit to the credit of the drawer of the check of $11,900.16; but the attention of the deputy superintendent of banks does not appear to have been called thereto, and he made no examination of the records, and, so far as appears, did not know this fact. At 11:50 o'clock a. m. that day the defendant received a telegram from the drawer of the check to stop payment thereon, and acting in behalf of the drawer of the check, which indemnified it, defendant subsequently refused to perform the contract created by its certification of the check.

This action is brought on the contract of certification, and the defendant pleads the facts to which reference has been made, and attempts to assert in behalf of the drawer of the check a right to an equitable set-off of its deposit account with the plaintiff in extinguishment of its liability. At the close of the evidence, counsel for plaintiff moved for the direction of a verdict, and counsel for defendant moved for the dismissal of the complaint, and by consent the questions were taken under consideration by the trial court, upon the understanding that the jury might be discharged and the complaint dismissed, or a verdict directed, as if the jury were present, and thereafter the learned trial justice filed a memorandum opinion directing judgment for plaintiff.

The German National Bank of Cincinnati is not a party to this action, and therefore no question with respect to its set-off rights, or, in other words, its right to have the Carnegie Trust Company's liability to it applied in payment of the check, is presented for decision. The duty the defendant owed to the drawer of the check to pay the same on presentation was fully discharged by certification of the check, the ef-

fect of which was to charge the check to the account of the drawer, as if it had been paid in cash, and to assign the deposit of the drawer with the defendant, to the extent of the face of the check, to the plaintiff, and to cancel all liability on the check as between the original parties, and to discharge the liability of the drawer of the check to the plaintiff, to the extent of the amount for which the check was drawn, and to create a new and wholly independent contract between the defendant and the Carnegie Trust Company, by which the former became liable to pay the amount of the check to the latter on demand (Meuer v. Phœnix Nat. Bank, 94 App. Div. 331, 88 N. Y. Supp. 83, affirmed 183 N. Y. 511, 76 N. E. 1100; First Nat. Bank of Jersey City v. Leach, 52 N. Y. 350, 11 Am. Rep. 708; Cooke v. State Nat. Bank, 52 N. Y. 96, 11 Am. Rep. 667; People v. St. Nicholas Bank, 77 Hun, 159, 28 N. Y. Supp. 407; Willets v. Phœnix Bank, 2 Duer, 121; Negotiable Instruments Law [Consol. Laws 1909, c. 38] §§ 323, 324; Morse on Banks and Banking, §§ 414, 418; Meads v. Merchants' Bank of Albany, 25 N. Y. 143, 82 Am. Dec. 331; Farmers' & Mechanics' Bank v. Butchers' & Drovers' Bank, 16 N. Y. 125, 69 Am. Dec. 678), and against which liability no equities then existing, or subsequently arising, in favor of the drawer against the payee would be available to the defendant as a defense (Corn Exchange Bank v. Farmers' Nat. Bank of Lancaster, 118 N. Y. 443, 23 N. E. 923, 7 L. R. A. 559; Castle v. Corn Ex. Bank, 148 N. Y. 122, 42 N. E. 518; Hays v. Hathorn et al., 74 N. Y. 486). See, also, Aubery v. Fiske, 36 N. Y. 47; McKay v. Draper, 27 N. Y. 256.

The case is not, in my opinion, distinguishable on principle from Corn Exchange Bank v. Farmers' Nat. Bank, supra, which I regard as decisive of it. The defendant, in certifying the check, neither acted in ignorance of, nor was it misled concerning, any material fact. The check was genuine, and the drawer's account was good. The superintendent of banks was under no obligation to examine the books of the plaintiff and to refrain from presenting the check for certification, or to inform the defendant that the plaintiff was indebted to the drawer in a greater amount than the face of the check. If the defendant was desirous of obtaining that information before certifying the check, it might have inquired of the drawer of the check, or of the superintendent of banks, if necessary; but it cannot defend against the contract liability created by the certification on the theory that it was not aware that the drawer of the check had a deposit account with the plaintiff, for that concerned the drawer of the check only, and not the defendant. See Dambmann v. Schulting, 75 N. Y. 55; Whiting et al. v. City Bank, 77 N. Y. 363.

I therefore vote for affirmance.