(161 App. Div. 268)

ANGLO-SOUTH AMERICAN BANK, Limited, v. NATIONAL CITY BANK
OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    March 6, 1914.)

1. BILLS AND NOTES (§ 74*)—LIABILITY OF ACCEPTOR—NEGOTIABLE INSTRU-
MENTS LAW.

Under the express provisions of Negotiable Instruments Law (Consol.
Laws, c. 38) § 112, the acceptor of a bill engages that he will pay it ac-
cording to the tenor of his acceptance.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 125, 126,
128, 130–135, 137–141; Dec. Dig. § 74.*]

2. ASSIGNMENTS (§ 49*)—CHECKS—EFFECT.

Under the express provisions of Negotiable Instruments Law (Consol.
Laws, c. 38) § 325, a check of itself is not an assignment of any part of the
funds to the credit of the drawer in the bank, and the bank is not liable
to the holder until it accepts or certifies the check.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 85–98; Dec.
Dig. § 49.*]

3. BANKS AND BANKING (§ 145*)—CHECKS—WRONGFUL NEGOTIATION—CER-
TIFICATION—INDORSEMENTS—FORGERY.

Certain conspirators, including the medical director of a fraternal as-
sociation, who was also its trustee, procured him to execute a note of
the association without authority, which the conspirators induced plain-
tiff to discount, by fraudulent representations.    Plaintiff drew its check
for the amount payable to the association, which one of the conspirators
took to defendant, the drawee bank, for certification.    After certification,
such medical director, acting ostensibly as trustee, but without authority,
indorsed the check, after which it was deposited in a bank and paid by
defendant without knowledge of the association, which subsequently re-
pudiated the entire transaction, never having received any portion of the
proceeds of the check or note.    *Held*, that possession of the check having
been obtained by fraud, and it never having been legally negotiated or de-
livered to the payee by plaintiff, its certification, while in the hands of the
conspirators, did not make it a valid, negotiable instrument, since the
bank by certifying only becomes liable to the lawful holder, and hence,
the check having been illegally paid, plaintiff was entitled to recover the
amount from the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 419–
433; Dec. Dig. § 145.*]

Appeal from Trial Term, New York County.

Action by the Anglo-South American Bank, Limited, against the
National City Bank of New York.    Judgment for plaintiff on report
of Wilbur Larremore, Esq., Referee, and defendant appeals.    Af-
firmed.

See, also, 148 App. Div. 906, 127 N. Y. Supp. 1109.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and HOTCHKISS, JJ.

George W. Morgan, of New York City (Henry H. Abbott and Ed-
ward A. Craighill, Jr., both of New York City, on the brief), for ap-
pellant.

Edwin T. Rice, of New York City, for respondent.

LAUGHLIN, J.    The plaintiff is a corporation organized under the
laws of the United Kingdom of Great Britain and Ireland, engaged in

_____
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the business of buying and selling bills of exchange, issuing letters of credit, and loaning money; and it maintains a branch office in the city of New York, and had a deposit account with the defendant. On the 10th of November, 1909, one Mackenzie, its agent in charge of the New York branch, drew its check on the defendant for $15,000, payable to the order of the National Protective Association, a secret fraternal mutual benefit association incorporated under the laws of Pennsylvania, with headquarters at Williamsport, in that state. The check was delivered to one Levick on his false representation that his firm of Uhlfelder, Thompson & Co. was authorized to procure for the payee of the check a loss in that amount on its note secured by collateral, as hereinafter stated. Levick, without authority from or knowledge of the payee, or of the plaintiff, presented the check unindorsed to the defendant for certification, and it was certified on the day of its date, and the amount thereof was thereupon charged to the account of plaintiff. The check was thereafter indorsed by Uhlfelder of Levick's firm, "Pay to the order of Uhlfelder, Thompson & Co.," under which one Moyer, who was the medical examiner, a trustee, and a director of the National Protective Association, acting corruptly, having received $300 out of the proceeds of the check from one Dunphy, who had no connection with the plaintiff and no connection with the payee, other than having formerly acted as its broker in negotiating loans, but who had participated in originating the fraudulent scheme, indorsed, "National Protective Association, F. L. Moyer, M. D., Trustee." Thereupon Uhlfelder, Thompson & Co. indorsed the check and made it payable to the order of the Italian-American Trust Company, which subsequently became and now is the Broadway Trust Company, for deposit with said company to the credit of said firm. The Italian-American Trust Company indorsed and delivered the check to the Metropolitan Bank, and it presented it to the defendant, through the New York Clearing House, for payment, and it was paid on the day after its date. The defendant in due course, and prior to the 10th day of January, 1910, returned the check to the plaintiff as a voucher.

Mackenzie took charge of the plaintiff's branch office in New York as its agent in December, 1908. Prior to the time he delivered this check to Levick, he had had business transactions for the plaintiff with Levick's firm in respect to loans and the sale of exchange and the issuance of exchange approximating $7,000,000; but the plaintiff had not made any loans through Levick, or otherwise, to said National Protective Association. Shortly prior to the 10th day of November, 1909, Levick, without authority from the National Protective Association, applied to Mackenzie for a loan of $15,000 to said National Protective Association on a promissory note purporting to have been made by it and 5,000 shares of the capital stock of the Canadian Mines Company as security. Mackenzie had delivered to Levick's firm blank forms of notes for use in connection with the business of said firm with the plaintiff. Levick presented to Mackenzie a collateral form promissory note for $15,000, purporting to be made by the "National Protective Association, F. L. Moyer, M. D., Trustee," dated November 10, 1909, payable to the "agent of the Anglo-South American Bank, Limited, or order, at its banking house in the city of New

York," 60 days after date, and said stock as security, and receive from him the check in question. In March, 1909, the National Protective Association executed four notes, three for $10,000 each and one for $5,000, for the purpose of negotiating the same to raise funds for the use of the association. The notes were signed by the president and treasurer and were payable to the order of F. L. Moyer, trustee, and were delivered to Moyer with authority to negotiate them. Moyer came to New York with the notes and called on Dunphy, with a view to having him negotiate them; and at that time Moyer, without authority from the National Protective Association, made a promissory note in blank in its name, signing the name, "F. L. Moyer, M. D., Trustee," and left it with Dunphy. Moyer calls it a collateral loan note, and testified that it "was intended to be used in connection with the transaction." As part of the fraudulent scheme which resulted in the signing and delivery of the check by the plaintiff to Levick, this blank note was filled out payable to the agent of the plaintiff, and it is the note which was delivered to Mackenzie, as already stated, and with it Levick presented and delivered to Mackenzie 5,000 shares of the capital stock of the Canadian Mines Company, as collateral security. A few hours prior to that time, the stock had been in the possession of the firm of Mack Bros., who were the apparent owners thereof, and it had been obtained from them by Dunphy as collateral security for their note for $7,500, which he was to discount, and for the discount of which part of the proceeds of the check in question was used. The stock was delivered by Mack Bros. under an agreement by which the pledgee was to have the right to repledge but not to sell it, and at the time of delivery a receipt was executed and delivered to Mack Bros. by said Moyer in the name of the National Protective Association, by which the association undertook to agree that it would hold the note and the certificates of stock subject to the terms of the note, and that the identical stock would be surrendered at the maturity and on payment of the note. The said note of Mack Bros. has not been paid.

A short time prior to the maturity of the note received by the plaintiff when it delivered the check to Levick, Levick and Dunphy paid the interest thereon and obtained an extension of one week, and subsequently a further extension of a few days. Dunphy was introduced to Mackenzie by Levick as the New York agent or representative of the National Protective Association. The note not having been paid at the expiration of the second extension, the plaintiff sold 3,000 shares of the stock which it held as collateral, but was unable to make good delivery, owing to the fact that the transfer agent refused to transfer the stock; the transfer thereof having been stopped by order of the Canadian Mines Company, signed by its president, on November 10, 1909. After the stoppage of the transfer of the stock had been brought to the attention of the plaintiff, its attorney examined the check and then for the first time ascertained that it had been deposited to the credit of Levick's firm, and Mackenzie testified that he first learned of this fact from plaintiff's attorney. The attorney for plaintiff testified that he first learned on February 12, 1910, that the authority of Moyer

to execute the note in behalf of the National Protective Association was challenged. Many of the facts were stipulated, and it is recited in the stipulation, among other things, that on February 12, 1910, the plaintiff "redemanded" payment of the note from the National Protective Association at its office in Williamsport, Pa., and tendered the stock held as collateral, and payment was refused; and that the plaintiff redelivered the check to the defendant in the latter part of March, 1910, and demanded of the defendant that the amount thereof be credited to its account, and on refusal it brought this action for the breach of its contract with defendant as a depositor. The defendant called upon the Metropolitan Bank to defend, and it in turn called upon the Broadway Trust Company, which, according to the points submitted in behalf of the appellant, has assumed the defense of the action. It appears that the National Protective Association and the firm of Uhlfelder, Thompson & Co. are insolvent.

The objection to the recovery made by the learned counsel for the appellant is based entirely upon the certification of the check. On the facts disclosed by this record, it appears that the indorsement of the check in the name of the National Protective Association was in effect a forgery. Section 42 of the Negotiable Instruments Law (chapter 38, Consolidated Laws; chapter 43, Laws of 1909) provides that where a signature is forged, or made without authority of the person whose signature it purports to be, "it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." If the check was delivered by the plaintiff to the payee, it is not contended, in view of these provisions of section 42 of the Negotiable Instruments Law, that the plaintiff would be precluded from setting up the forgery or want of authority in Moyer, who assumed to indorse it in the name of the payee, were it not for the certification; but, if it had an inception, then the certification doubtless would be effective. It is contended on the part of the appellant that the plaintiff is precluded by the allegations in the complaint from contending that the check was not delivered to the payee. The plaintiff alleges that it "drew and issued" the check "and thereby required the defendant to pay to the National Protective Association," or to its order, the amount thereof, and that the check, after it was issued, "came wrongfully into the possession of one F. L. Moyer, who indorsed the said check" in the name of the payee, but that said indorsement was fraudulent and was not authorized by the payee, and gave the defendant no right or authority to pay the check "to the holder or holders thereof other than the National Protective Association," and that the payment was in violation of the plaintiff's rights as a depositor with the defendant and was void, and that the defendant did not pay the amount of the check to the payee or to its order, and that the payee "never received said amount so directed to be paid to it." The defendant admitted by its answer that the plaintiff drew and issued the

check and pleaded the certification of the check, as already stated as a defense.

Upon the trial, the defendant objected to the evidence with respect to the circumstances under which the check was drawn and delivered, upon the ground that the plaintiff had pleaded that the check was issued, as stated. The learned referee, however, received the evidence and found the facts in accordance therewith. It is contended, in effect, in behalf of the appellant that, if the plaintiff had not alleged that it issued the check to the payee, the defendant might have shown that the plaintiff was guilty of negligence in signing the check and in parting with possession thereof, and that therefore, in view of the state of the pleadings, it was error to receive the evidence with respect to the circumstances under which the check was issued and delivered to Levick. I am of opinion that there is no force in that contention. If the check had not been certified, mere negligence on the part of the plaintiff with respect to signing and delivering it to Levick would not have justified the defendant in paying it on the forged or unauthorized indorsement. If the check had ultimately been received and accepted by the payee, and it had indorsed and negotiated it, that probably would have constituted a ratification of Levick's acts in procuring the loan, and the plaintiff might then be precluded from contending that it did not intend to issue or deliver the check to the payee. There is no evidence tending to show, or from which an inference would be warranted, that the plaintiff in any manner represented that Moyer was authorized to indorse the check for the payee. If it were not for the certification of the check, there is no conceivable ground upon which it could even be contended that the defendant was justified in appropriating the funds of the plaintiff to the payment of the check. The real question in the case, therefore, arises on the effect of the certification of the check.

If the plaintiff itself, before the issuance and delivery of the check, had caused it to be certified and had thereafter determined not to deliver the check to the payee, there is and can be no question but that it would be entitled to have the amount charged to its account, on the certification, again credited to its account. In other words, the certification in such circumstances would not estop the plaintiff from surrendering the check at any time before it issued and delivered it and demanding that the defendant credit its account with the amount with which it had been charged on the certification of the check. The certification of a check, if made at the instance of the drawer, does not become effective until the issuance and delivery of the check to the payee, for the implied obligation of the bank is to pay the money deposited to the depositor or to his order. G. N. Bank v. Bingham, 118 N. Y. 349, 23 N. E. 180, 7 L. R. A. 595, 16 Am. St. Rep. 765; Lynch v. First Nat. Bank, etc., 107 N. Y. 179, 13 N. E. 775, 1 Am. St. Rep. 803; Thomson v. Bank of British North America, 82 N. Y. 1; Shipman v. Bank of New York, 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821; Bank of British North America v. Merchants' Nat. Bank, 91 N. Y. 106; Citizens' Nat. Bank v. Importers' & Traders' Bank, 119 N. Y. 195, 23 N. E. 540; Kearny v. Met. Trust

Co., 110 App. Div. 236, 97 N. Y. Supp. 274; Carnegie Trust Co. v. First Nat. Bank, 156 App. Div. 712, 141 N. Y. Supp. 745; Freund v. Importers', etc., Bank, 76 N. Y. 352. See Nassau Bank v. Broadway Bank, 54 Barb. 236; First Nat. Bank v. Leach, 52 N. Y. 350, 11 Am. Rep. 708; Worth v. Case, 42 N. Y. 362.

The effect of a certification of a check at the instance of the payee, or other holder thereof, is to create a new contract between the drawee and the payee, or other holder, for the payment of the amount thereof, and the drawer is thereby released from liability thereon. Meuer v. Phenix Nat. Bank, 94 App. Div. 331, 88 N. Y. Supp. 83, affirmed 183 N. Y. 511, 76 N. E. 1100; First Nat. Bank of Jersey City v. Leach, 52 N. Y. 350, 11 Am. Rep. 708; Freund v. Importers', etc., Bank, 76 N. Y. 352. See, also, Carnegie Trust Co. v. First Nat. Bank of City of N. Y., 156 App. Div. 712, 141 N. Y. Supp. 745. I am of opinion that this rule is logically and necessarily confined to cases in which the check is certified at the instance of the payee, or other holder thereof in due course. Thompson v. Bank of British North America, supra; Hartford v. Greenwich Bk., 157 App. Div. 448, 142 N. Y. Supp. 387. See, also, Morrison v. Chapman, 155 App. Div. 509, 140 N. Y. Supp. 700; G. N. Bank v. Bingham, supra. The certification of the check in question was not made at the instance of the payee, or of any holder thereof in due course, but at the instance of Levick, who had induced the drawing and issuance thereof by fraud, and he was not authorized to and did not represent the payee. The act of certification was not binding on the payee. The payee was in no manner estopped thereby from holding the drawer liable on the contract under which the check was issued, if it had ratified such contract. If the payee had accepted the check after it had been certified at the instance of Levick, it doubtless would have thereby released the drawer and have accepted the liability of the defendant on the certification, and have become liable to the drawer on the note in consideration for which the check was drawn and delivered to Levick; but that was not done. The payee in no manner became a party to the transaction, for the loan was neither authorized by it originally nor ratified by it. It is conceded that the indorsement of the check was not made by the authority of the payee, and was not binding upon it, and it is quite clear from the evidence that the payee did not become liable to the plaintiff on the note, or on any representation that it owned, or had authority to pledge the stock as collateral security therefor. ·

The facts pleaded by the defendant with respect to the certification of the check were formally stipulated, and the stipulation was read in evidence by the plaintiff. That, however, was not part of the plaintiff's case and should not be deemed to preclude it from meeting the facts with respect to the certification by evidence of the facts and circumstances under which the check was drawn and issued, which were received over the defendant's objection and exception.          .

On the uncontroverted evidence as thus presented, the case was, I think, no more favorable to defendant than if the plaintiff had procured the certification and did not thereafter deliver the check to the payee. The allegations of the complaint with respect to the issuance

of the check should be construed in the light of the evidence, which shows that the plaintiff was induced to draw and deliver the check to Levick under the false and fraudulent representation that he was authorized to negotiate the note of the National Protective Association. The point made by the appellant relates to form rather than to substance. It is, in effect, conceded that the defendant was not warranted in paying the check, but it is contended that it is liable to the payee and not to the plaintiff. It is also, in effect, conceded that, if the plaintiff had brought a suit in equity against the defendant and the payee of the check for the cancellation of the certification, there would be no defense, but it is contended that this is an action at law, and that, in view of the allegations of the complaint with respect to the issuance of the check, the defendant may be liable to the payee, and that it will not be protected against such liability by the judgment in this action. The uncontroverted evidence clearly shows that the payee of the check has no claim against the defendant thereon, for the check was in fact never delivered to or accepted by it, but was fraudulently received by Levick and negotiated by him without the knowledge or consent of the payee and without any fact tending to show a ratification by the payee; but, on the contrary, the uncontroverted evidence shows a repudiation by the payee by its denial of liability on the note in consideration for which the check was issued; and, through such fraudulent negotiation, the check was finally returned to the hands of the drawer, in whose hands it now is, and who tendered delivery thereof to the defendant, which, in the circumstances, should be deemed a demand for the cancellation of the certification.

The effect of the certification of the check and charging the amount thereof to plaintiff's account was to set apart to the credit of the check the amount thereof (Schlesinger v. Kurzrok, 47 Misc. Rep. 634, 94 N. Y. Supp. 442; Meuer v. Phenix Nat. Bank, 94 App. Div. 331, 88 N. Y. Supp. 83; Willets v. Phœnix Bank, 9 N. Y. Super. Ct. 121; First Nat. Bank v. Leach, 52 N. Y. 350, 11 Am. Rep. 708); and, since it has not been lawfully paid, it is still in law held by defendant subject to the check (Bank of British North America v. Merchants' Nat. Bank, supra); and, since the check never had a valid inception, the fund still belongs to the plaintiff.

It follows, therefore, that the judgment should be affirmed, with costs.

INGRAHAM, P. J. I concur in the affirmance of this judgment. The plaintiff was induced to deliver to one Levick a check drawn on the defendant to the order of the National Protective Association, a Pennsylvania corporation, for $15,000 by the false and fraudulent representation that this National Protective Association had applied to the plaintiff for a loan and had executed a note which was signed on behalf of the corporation by one Moyer, as trustee, and which Levick delivered to the plaintiff and received a check payable to the order of the corporation for that amount. The National Protective Association had made no application for a loan and knew nothing about the transaction. Moyer had no authority to apply for the loan or to ex-

ecute promissory notes for the corporation; and the whole transaction was a fraud upon the plaintiff. After Levick got this check, he procured its certification by the defendant, induced Moyer to indorse it on behalf of the payee, and then Levick or his associates deposited it with a trust company, which collected it from the defendant and paid the proceeds to Levick or his associates. This note, purporting to be signed on behalf of the National Protective Association, was renewed by the plaintiff, but, when it was finally presented to the National Protective Association for payment, that association repudiated the whole transaction, and plaintiff then demanded of the defendant the return of the amount which it had paid upon this check. If this check had not been certified, there could be no question but that the plaintiff would be entitled to recover. The only question presented is whether the certification of the check under these circumstances operated as an assignment of the funds to the credit of the drawer with the bank and made the bank liable as a principal debtor to the one presenting the check for payment.

[1] Under section 112 of the Negotiable Instruments Law, the acceptor, by accepting the instrument, engages that he will pay it according to the tenor of his acceptance.

[2] Section 325 of the Negotiable Instruments Law provides that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check. In Freund v. Importers' & Traders' Nat. Bank, 76 N. Y. 352, the court, after holding that Blun & Sons were the legal holders of the check, with such right as that they could enforce it against the makers, held that the certification of it by the defendant at their request had all the legal effect which the same certification would have had had it been indorsed by the payees; that the legal effect is the· same as if the defendant had paid the money upon it, with the proper indorsement upon it of the payees; that:

"By the certification of a negotiable check, properly negotiated, the depositary of the fund checked upon becomes liable to the owner of the certified paper, and is bound to have in readiness the money to meet it, from the fund drawn upon. When the check is not negotiable, or has not been indorsed, but has by assignment come into the hands of a lawful owner, who has a right to enforce it against the maker, the effect is the same."

And this case was followed in Meuer v. Phenix Nat. Bank, 94 App. Div. 331, 88 N. Y. Supp. 83, affirmed 183 N. Y. 511, 76 N. E. 1100, but was distinguished in G. N. Bank v. Bingham, 118 N. Y. 349, 23 N. E. 180, 7 L. R. A. 595, 16 Am. St. Rep. 765, and Lynch v. First Nat. Bank of Jersey City, 107 N. Y. 179, 13 N. E. 775, 1 Am. St. Rep. 803.

[3] Undoubtedly, if this check had lawfully come into the hands of the payee, and the payee or any indorsee or transferee thereof had presented the check to defendant, who had certified it, the bank would have become the principal debtor, the plaintiff as drawer would have been discharged, and the defendant would have become liable to the legal holder of the check. But, from the facts found by the referee,

the check was never legally negotiated or delivered to the payee by the plaintiff; possession of the check had been obtained by fraud, not by the payee, but by the conspirators who had been guilty of fraud; while in their hands they presented it to the defendant, and it was certified; then by forging the indorsement of the payee they procured payment of the check. The certification was a part of the scheme by which the conspirators procured the check, had it certified, had the payee's name forged, and procured payment. This check in the hands of the conspirators was never a valid negotiable instrument. It had its inception in fraud; the certification was procured by fraud; the indorsement was forged; and the payment was obtained by a fraudulent scheme to defraud the plaintiff. The plaintiff was entitled to repudiate the whole transaction, and, the payee never having indorsed the check, the defendant was not justified in paying it and was under no obligation either to the payee or to the holder of the check who had secured no title to it, and who had no authority to negotiate it or collect it. By the certification of the check the certifying bank became indebted to the lawful holder of the check; but, if there never was a lawful holder of the check or a person entitled to enforce the check or collect the amount thereof, I do not see that the certification of the check can affect the liability of the drawer, nor is the bank certifying it under any obligation to pay it. It seems to me clear, if defendant had refused to pay the check, that neither the trust company, in which it had been deposited, nor any other holder, in the absence of an indorsement by the payee, could have recovered the amount thereof from the defendant. That being so, the defendant had plaintiff's money on deposit, which it had set aside to pay this check when presented, properly indorsed by the payee, and therefore, it never having been indorsed, it never could have been collected. The defendant having in its hands the plaintiff's money set aside to pay the check, which had never been negotiated by the drawer nor indorsed by the payee, the defendant could not hold the money as against plaintiff's claim for reimbursement.

For the reasons stated, I concur in the affirmance of this judgment.

CLARKE, SCOTT, and HOTCHKISS, JJ., concur.